**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:     (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorney for Plaintiff**
- *additional counsel on signature page -*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM WICKS, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>              v.<br><br>ALPHABET, INC., LAWRENCE E. PAGE, SUNDAR PICHAI and RUTH M. PORAT,<br><br>                              Defendants. | ) <br>) Case No.<br>)<br>)<br>) **CLASS ACTION COMPLAINT**<br>)  **FOR VIOLATION OF FEDERAL**<br>) **SECURITIES LAWS**<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |

Plaintiff Adam Wicks ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alphabet, Inc. ("Alphabet" or the "Company"),

1

analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Alphabet between April 23, 2018 and October 7, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.       Alphabet was incorporated in 2015 and is the parent company of its leading subsidiary Google Inc. ("Google"), among others.  Google was founded in 1998.  Alphabet and Google are headquartered in Mountain View, California.  The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GOOG."

3.       Alphabet, through its subsidiary Google, operates a social networking website called "Google+" that allows people to communicate with their family, friends, and coworkers. Google+ users ostensibly have the ability to share and restrict the sharing of personal information according to their preferences by changing privacy settings.

4.       Between 2015 and March 2018, a software glitch in the Google+ website permitted outside developers to access the personal profile data of Google+ members who had not opted to permit their data to be shared publicly.  Defendants discovered this glitch in March 2018, ran tests to determine the impact of the glitch, and determined that the data of nearly half of a million users had been exposed to third parties.  Google's legal and policy staff drafted a memorandum regarding the security failure and shared it with senior executives.  The

memorandum warned that disclosing the incident would likely trigger "immediate regulatory interest." Google's CEO, Defendant Pichai, was briefed on the plan not to notify users after an internal committee had reached that decision.

5.     Throughout the Class Period, Defendants repeatedly made materially false and misleading statements regarding the security failure affecting users personal data. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company's security measures had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (2) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (3) the Company's security protections did not shield personal user data against theft and security breaches; and (4) the Company's security measures had been breached due to employee error, malfeasance, system errors or vulnerabilities.

6.     On October 8, 2018, citing "people briefed on the incident and documents reviewed," *The Wall Street Journal* reported that in March 2018, Google discovered a software glitch in its Google+ social network that had exposed users' personal data to third parties, but "opted not to disclose the issue . . . in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage." Following this news, Google's stock price fell $67.75 per share, or 5.9%, over the following two trading sessions, to close at $1,081.22 per share on October 10, 2018.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Alphabet is headquartered in this Judicial District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12.      Plaintiff, as set forth in the accompanying Certification, purchased common shares of Alphabet at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.      Defendant Alphabet, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1600 Amphitheatre Parkway Mountain View, CA 94043.  Alphabet's securities trade on the NASDAQ under the ticker symbol "GOOG."

14.      Defendant Lawrence E. Page ("Page") has served at all relevant times as the Company's Chief Executive Officer ("CEO").

15.      Defendant Sundar Pichai has served at all relevant times as Google's Chief Executive Officer ("CEO").

16.     Defendant Ruth M. Porat ("Porat") has served at all relevant times as the Company's CFO.

17.     Defendants Page, Pichai and Porat are sometimes referred to herein collectively as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Alphabet's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Alphabet, through its subsidiary Google, operates a social networking website called "Google+" that allows people to communicate with their family, friends, and coworkers. Google+ users ostensibly have the ability to share and restrict the sharing of personal information according to their preferences by changing privacy settings.

20.     In developing Google+, Google created an application programming interface ("API") (a software intermediary that allows two applications to talk to each other) to help smartphone app developers to access profile information of users who, through their privacy settings, had permitted such information to be shared.  This profile information included personal

5

and contact information of users, as well as information about the persons to whom the users are connected on Google+.

21.     Between 2015 and March 2018, a software glitch in this Google+ API permitted outside developers to access the personal profile data of Google+ members who had not opted to permit their data to be shared publicly.  Indeed, the glitch permitted third parties to access the personal data of users that the users had expressly marked as nonpublic in the Google+ privacy settings.

22.     In March 2018, Googled discovered this glitch in the API.  Google ran tests for two weeks to determine the impact of the glitch, and found that the personal data of 496, 951 users had been exposed to third parties.  The exposed user data included full names, email addresses, birth dates, gender, profile photos, places lived, occupation and relationship status.  Some of the individuals whose data was exposed included paying users of Google's "G Suite," a set of applications including Google Docs and Googe Drive, and these users include institutions such as governments, businesses, and schools.  As many as 438 third-party applications had access to the unauthorized Google+ data.

23.     Google's legal and policy staff drafted a memo regarding the security failure and shared it with senior executives.  The memo warned that disclosing the incident would likely trigger "immediate regulatory interest."  The memo further stated that the incident would likely result "in us coming into the spotlight alongside or even instead of Facebook despite having stayed under the radar throughout the Cambridge Analytica scandal," referring to the recent scandal in which a British consulting firm acquired and used personal data from Facebook without authorization.  The memo also noted that disclosure "almost guarantees Sundar [Pichai] will testify before Congress."

24.     According to two individuals briefed on the matter, Google's CEO, Defendant Pichai, was briefed on the plan not to notify users after an internal committee had reached that decision.

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

25.     On February 1, 2018, the Company issued its SEC Annual Report on Form 10-K for the fiscal year ending December 31, 2017 (the "1Q 2017 10-K"), in which the Company stated, in Part I, Item 1A "Risk Factors":

> ***Privacy concerns relating to our technology could damage our reputation and deter current and potential users or customers from using our products and services. If our security measures are breached resulting in the improper use and disclosure of user data, or if our services are subject to attacks that degrade or deny the ability of users to access our products and services, our products and services may be perceived as not being secure, users and customers may curtail or stop using our products and services, and we may incur significant legal and financial exposure.***

> From time to time, concerns have been expressed about whether our products, services, or processes compromise the privacy of users, customers, and others. Concerns about our practices with regard to the collection, use, disclosure, or security of personal information or other privacy related matters, even if unfounded, could damage our reputation and adversely affect our operating results.

> Our products and services involve the storage and transmission of users' and customers' proprietary information, and theft and security breaches expose us to a risk of loss of this information, improper use and disclosure of such information, litigation, and potential liability. Any systems failure or compromise of our security that results in the release of our users' data, or in our or our users' ability to access such data, could seriously harm our reputation and brand and, therefore, our business, and impair our ability to attract and retain users. We expect to continue to expend significant resources to maintain state-of-the-art security protections that shield against theft and security breaches.

> [. . .]

> Our security measures may also be breached due to employee error, malfeasance, system errors or vulnerabilities, including vulnerabilities of our vendors, suppliers, their products, or otherwise. Such breach or unauthorized access, increased government surveillance, or attempts by outside parties to fraudulently induce employees, users, or customers to disclose sensitive information in order to gain access to our data or our users' or customers' data could result in significant legal and financial exposure, damage to our reputation, and a loss of confidence in the security of our products and services that could potentially have an adverse effect on our business.

[. . .]

If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed and we could lose users and customers.

26.     On April 23, 2018, the Company issued its SEC Quarterly Report on Form 10-Q for the period ending March 31, 2018 (the "1Q 2018 10-Q"), in which the Company stated:

Our operations and financial results are subject to various risks and uncertainties, including those described in Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017, which could adversely affect our business, financial condition, results of operations, cash flows, and the trading price of our common and capital stock. There have been no material changes to our risk factors since our Annual Report on Form 10-K for the year ended December 31, 2017

27.     On July 23, 2018, the Company issued its SEC Quarterly Report on Form 10-Q for the period ending June 30, 2018 (the "2Q 2018 10-Q"), in which the Company stated:

Our operations and financial results are subject to various risks and uncertainties, including those described in Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017, which could adversely affect our business, financial condition, results of operations, cash flows, and the trading price of our common and capital stock. There have been no material changes to our risk factors since our Annual Report on Form 10-K for the year ended December 31, 2017

28.     The statements referenced in ¶¶ 25-27 above were materially false and/or misleading because:  (1) the statements failed to disclose that the Company's security measures already had failed recently and massively, as Google had exposed the private data of hundreds of thousands of users of Google+ to third parties; (2) damage to the Company's reputation and operating results and loss of customers from this failure of the Company's security measures were imminent and inevitable; (3) the Company did not maintain state-of-the-art security protections, and its protection did not shield personal user data against theft and security breaches; and (4) the Company's security measures already had been breached due to employee error, malfeasance, system errors or vulnerabilities.

29.     The Q1 2018 10-Q and 2Q 2018 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Page and Porat, stating that "the information contained in the [Q1 2018 10-Q and 2Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company for the periods presented therein."

30.     The statements referenced in ¶ 29 above were materially false and/or misleading because the Q1 2018 10-Q and 2Q 2018 10-Q did not fairly present, in all material respects, the financial condition and results of operations of the Company for the periods presented therein, for the reasons articulated above.

## The Truth Begins To Emerge

31.     On October 8, 2018, citing "people briefed on the incident and documents reviewed," *The Wall Street Journal* reported that in March 2018, Alphabet's subsidiary Google discovered a software glitch in its Google+ social network that had exposed users' personal data to third parties, but "opted not to disclose the issue . . . in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage."   Following this news, Alphabet's stock price fell $67.75 per share, or 5.9%, over the following two trading sessions, to close at $1,081.22 per share on October 10, 2018.

32.     Following revelation of the security breach, Google announced plans to shut down Google+.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Alphabet common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alphabet common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alphabet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Alphabet;

- whether Defendants caused Alphabet to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alphabet securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alphabet common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Alphabet common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.  Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.  This Count is asserted against Alphabet and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.  During the Class Period, Alphabet and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Alphabet and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Alphabet common shares during the Class Period.

47.     Alphabet and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Alphabet were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Alphabet, their control over, and/or receipt and/or modification of Alphabet allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Alphabet, participated in the fraudulent scheme alleged herein.

48.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Alphabet personnel to members of the investing public, including Plaintiff and the Class.

49.     As a result of the foregoing, the market price of Alphabet common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Alphabet's and the

Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Alphabet common shares during the Class Period in purchasing Alphabet common shares at prices that were artificially inflated as a result of Alphabet's and the Individual Defendants' false and misleading statements.

50.     Had Plaintiff and the other members of the Class been aware that the market price of Alphabet common shares had been artificially and falsely inflated by Alphabet's and the Individual Defendants' misleading statements and by the material adverse information which Alphabet's and the Individual Defendants did not disclose, they would not have purchased Alphabet's common shares at the artificially inflated prices that they did, or at all.

51.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52.     By reason of the foregoing, Alphabet and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Alphabet common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of Alphabet, and conducted and participated, directly and indirectly, in the conduct of Alphabet's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alphabet's financial condition and results of operations, and to correct promptly any public statements issued by Alphabet which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alphabet disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Alphabet to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Alphabet within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Alphabet common shares.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alphabet.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

15

1

**DEMAND FOR TRIAL BY JURY**

2
      Plaintiff hereby demands a trial by jury.

3
Dated: October 11, 2018

4
                                      Respectfully submitted,

5

6
**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)

7
468 North Camden Drive
Beverly Hills, CA 90210

8
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

9

10
**POMERANTZ, LLP**
Jeremy A. Lieberman

11
Austin P. Van
600 Third Avenue, 20th Floor

12
New York, New York 10016
Telephone: (212) 661-1100

13
Facsimile: (212) 661-8665

14
E-mail: jalieberman@pomlaw.com
E-mail: avan@pomlaw.com

15

16
**POMERANTZ LLP**
Patrick V. Dahlstrom

17
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603

18
Telephone: (312) 377-1181

19
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

20

21
***Attorneys for Plaintiff***

22

23

24

25

26

27

28

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00221758;3 }