BORIS FELDMAN, State Bar No. 128838
Email: boris.feldman@wsgr.com
BENJAMIN M. CROSSON, State Bar No. 247560
Email: bcrosson@wsgr.com
CHERYL W. FOUNG, State Bar No. 108868
Email: cfoung@wsgr.com
STEPHEN B. STRAIN, State Bar No. 291572
Email: sstrain@wsgr.com
SAMUEL J. REED DIPPO, State Bar No. 310643
Email: sreeddippo@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants Alphabet Inc.,
Lawrence E. Page, Sundar Pichai
and Ruth M. Porat

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No.: 4:18-CV-06245-JSW<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing Date: August 23, 2019<br>Hearing Time: 9:00 a.m.<br>Courtroom: 5** |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 3

THE APPLICABLE PLEADING STANDARDS GOVERNING THIS CASE ...................... 5

ARGUMENT ............................................................................................................................. 6

I.  THE COMPLAINT FAILS TO PLEAD A MATERIALLY FALSE OR
    MISLEADING STATEMENT. .................................................................................... 6

    A.  Plaintiff Does Not Plead Particularized Facts Showing That The Risk
        Disclosures Were False Or Misleading. ........................................................... 6

    B.  Plaintiff Does Not Plead Any Particularized Facts To Show That The
        Software Bug Was Material. .......................................................................... 10

II. THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF
    SCIENTER. ................................................................................................................ 11

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ................................................................................6

*Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015) ..............................................10, 11

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002) ..................................................6

*Colyer v. Acelrx Pharms, Inc.*, No. 14-CV-04416-LHK, 2015 WL 7566809 (N.D. Cal. Nov. 25, 2015) .........................................................................................................9, 13

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ..........................................................................5

*Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001) ................................................................6

*Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*, No. CV15-07952-CAS, 2017 WL 114401 (C.D. Cal. Jan. 9, 2017) ..............................................................................................11

*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000) ..........................................11

*In re Heartland Payment Sys., Inc. Sec. Litig.*, No. CIV. No. 09-1043, 2009 WL 4798148 (D.N.J. Dec. 7, 2009) .................................................................................passim

*In re Netflix, Inc. Sec. Litig.*, No. 12-00225 SC, 2014 WL 212564 (N.D. Cal. Jan. 17, 2014), *aff'd*, 647 F. App'x 813 (9th Cir. 2016) ................................................................11

*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014) ................................................passim

*In re Read-Rite Corp.*, No. C-03-03148 RMW, 2004 WL 2125883 (N.D. Cal. Sept. 22, 2004) ..................................................................................................................2, 3, 9, 13

*In re Siebel Systems, Inc. Sec. Litig.*, No. C 04-0983 CRB, 2005 WL 3555718 (N.D. Cal. Dec. 28, 2005), *aff'd Wollrab v. Siebel Sys., Inc.*, 261 F. App'x 60 (9th Cir. 2007) ................................................................................................................13

*In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp.3d 1034 (N.D. Cal. 2014), *aff'd*, 671 F. App'x 670 (9th Cir. 2016) ..............................................................................................3, 7, 9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ......................................5

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008) ....................5, 11, 12

*Panther Partners, Inc., v. Ikanos Commns, Inc.*, 538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd in relevant part, rev'd in part on other grounds*, 347 F. App'x 617 (2d Cir. 2009) ........................................................................................................passim

*Panther Partners, Inc., v. Ikanos Commns, Inc.*, 347 F. App'x 617 (2d Cir. 2009) ....................2, 11

*Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014) ...............................11, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......................................5, 6, 9, 12

*Webb v. SolarCity Corp.*, 884 F.3d 844 (9th Cir. 2018) ..............................................................6, 13

*Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1040-1041 (N.D. Cal. 2012) ..........................9

*Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999)..................................................................8

*Zamir v. Bridgepoint Educ., Inc.*, No. 15-CV-408 JLS (DHB), 2018 WL 1258108
    (S.D. Cal. Mar. 12, 2018)..........................................................................................................13

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 ................................................................12

### STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 78j(b) ..............................................................................................................................1

15 U.S.C. § 78t(a) ..............................................................................................................................1

15 U.S.C. § 78u-4(a) ..........................................................................................................................1

15 U.S.C. § 78u-4(b)(1)(B) ................................................................................................................5

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................................................5

15 U.S.C. § 78u-4(b)(3)(A) ................................................................................................................6

Fed. R. Civ. P. 9(b).............................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................1

17 C.F.R. § 240.10b-5 .....................................................................................................................1, 5

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 23, 2019, at 9:00 a.m., before The Honorable Jeffrey S. White, United States District Court, Courtroom 5, 2d floor, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Alphabet Inc. ("Alphabet" or the "Company"), Lawrence E. Page, Sundar Pichai, and Ruth M. Porat (collectively "Defendants") will move to dismiss the Class Action Complaint for Violation of Federal Securities Laws ("Complaint") pursuant to the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C. § 78u-4(a) *et seq.*, and Fed. R. Civ. P. 9(b) and 12(b)(6). This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities; Defendants' Request for Judicial Notice and Notice of Incorporation By Reference; the Declaration of Cheryl W. Foung and accompanying exhibits; the [Proposed] Order; the pleadings, records and papers on file; oral argument; and, any other matters properly before the Court.

## STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))

1. Should the claims asserted under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, respectively) be dismissed for failure to plead sufficiently that any Defendant made a materially false or misleading statement?

2. Should the claims asserted under Section 10(b) and Rule 10b-5 be dismissed for failure to plead particularized factual allegations giving rise to a strong inference of scienter?

3. Should the control person claim under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) be dismissed because Plaintiff has failed to state a claim under Section 10(b)?

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY OF ARGUMENT

On October 8, 2018, The Wall Street Journal reported that Google had discovered a software bug in Google+, its social network.[1] The article said the bug "gave outside developers access to private data" of Google+ users, but that Google had remediated the bug quickly after its

---

[1] Complaint ¶¶ 2-3. (All references to "¶" are to numbered allegations in the Complaint.) "Google" is Google LLC (formerly Google Inc.), one of Alphabet's subsidiaries. *Id.* For purposes of this Motion, Alphabet, Google, and "the Company" are used interchangeably.

discovery and did not find any misuse of data. Based almost entirely on this article, Plaintiff claims that Defendants committed securities fraud by failing to disclose the remediated software bug earlier. In particular, Plaintiff alleges that this failure rendered three sets of Alphabet's risk disclosures false and misleading, namely the risk factors regarding the potential for data breaches that are disclosed in Alphabet's (1) Form 10-K for 2017, (2) April 2018 1Q Form 10-Q, and (3) July 2018 2Q Form 10-Q. This claim fails as a matter of law for the following reasons.

**The 2017 Form 10-K was filed before the bug was even discovered.** The 2017 Form 10-K was filed on February 6, 2018 ("2017 Form 10-K", Ex. 1). As Plaintiff alleges, the bug was not even discovered until March 2018. ¶ 4. It "is obvious, of course, that a defect problem which does not emerge until [after the filing] cannot be disclosed in [that filling]." *Panther Partners, Inc.*, v. *Ikanos Commns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008), *aff'd in relevant part, rev'd in part on other grounds*, 347 F. App'x 617 (2d Cir. 2009); *infra* at 7-8.

**The bug already had been remediated by the time the April and July 2018 Form 10-Qs were filed.** In subsequent Form 10-Qs filed on April 23, 2018, and July 23, 2018, Alphabet disclosed that it had no material changes to the risk disclosures in its 2017 Form 10-K. Plaintiff contends these statements were also false or misleading. Again, however, Plaintiff faces insurmountable timing problems, as the bug had *already been remediated* at the time of those statements. *Infra* at 9, 10. Plaintiff also fails to plead that the earlier risk warnings were false or misleading, or otherwise not appropriate and meaningful. *See In re Heartland Payment Sys., Inc. Sec. Litig.*, No. CIV. No. 09-1043, 2009 WL 4798148, at *5, *6 (D.N.J. Dec. 7, 2009); *In re Read-Rite Corp.*, No. C-03-03148 RMW, 2004 WL 2125883, at *5 (N.D. Cal. Sept. 22, 2004).

**Plaintiff fails to allege materiality.** Putting aside these fundamental fatal flaws, the Complaint also conspicuously fails to plead how or why the bug was *material*. *Infra* at 10-12. There are no allegations of data misuse prior to the remediation, breach by a third party, or that the consumer data at issue was, for example, of a sensitive financial nature like credit card information. Nor does the Complaint plead that the bug materially affected Google's earnings. *Panther Partners, Inc.*, v. *Ikanos Commns, Inc.*, 347 F. App'x 617, 621 (2d Cir. 2009); *cf. In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1050 (9th Cir. 2014). Given these pleading

failures, the Complaint does not identify any statement that was made materially misleading by not earlier disclosing the existence and remediation of the bug. *In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp.3d 1034, 1041, 1043-44, 1046 (N.D. Cal. 2014), *aff'd*, 671 F. App'x 670 (9th Cir. 2016); *Heartland*, 2009 WL 4798148, at *5, *6.

**There are also no allegations of scienter.** Without any actionable statements pleaded, the Court need not address the issue of scienter. Regardless, Plaintiff pleads none of the necessary facts. Other than providing Individual Defendants' titles, there are no specific facts alleged about any Defendant's knowing wrongdoing, including making false statements with intent to mislead or deceive. Instead, the Complaint concedes that Google expeditiously remediated the bug that impacted Google+ APIs upon discovery, found no misuse of data, and identifies no material adverse impact on earnings. *See Heartland*, 2009 WL 4798148, at *8; *Read-Rite*, 2004 WL 2125883, at *4; *infra* at 12-14. The Complaint should be dismissed.

### STATEMENT OF FACTS

Google operates Google+, a social network for people to communicate with others. ¶¶ 3-4, 32. On October 8, 2018, Google announced in a blog post that it would be closing down its Google+ service and website for consumers because of low usage and engagement. *Project Strobe: Protecting Your Data, Improving Our Third-Party APIs, and Sunsetting Consumer Google+*, Google Blog, (Oct. 8, 2018), Ex. 4 at 1-2. That same day, The Wall Street Journal reported on a bug affecting a certain API (application program interface, a software intermediary that allows two applications to talk to each other (¶ 20)) for the Google+ service.[2] That article forms the central basis for Plaintiff's claims.

The WSJ article reported that the Google+ bug was discovered as part of a proactive attempt to review Google policies and third party developer access, and the bug was the result of a "flaw in an API [application programming interface] Google created to help app developers access an array of profile and contact information about the people who sign up to use their apps,

---

[2] *See* Douglas MacMillan & Robert MacMillan, *Google Exposed User Data, Feared Repercussions of Disclosing to Public*, Wall St. J. (Oct. 8, 2018) ("WSJ article"), Ex. 2 at 3; *see* ¶¶ 6, 31 (noting that following WSJ article, Alphabet stock dropped 5.9%).

as well as the people they are connected to on Google+." Ex. 2 at 3. The article did not suggest that a security breach occurred or that information of a sensitive financial nature was exposed. *See* ¶ 22 (alleging the exposed user data included profile information like gender or occupation).

The WSJ article also reported Google's prompt remediation of the bug shortly after discovery:

> A software glitch in the social site gave outside developers potential access to private Google+ profile data between 2015 and March 2018, when internal investigators discovered and fixed the issue.

Ex. 2 at 1, 2. It simultaneously reported that Google had found no evidence of misuse of the data at issue. *Id*. The WSJ article stated the basis on which Google decided not to disclose the bug earlier, according to a spokesman:

> In weighing whether to disclose the incident, the company considered "*whether we could accurately identify the users to inform, whether there was any evidence of misuse, and whether there were any actions a developer or user could take in response*," he said. "*None of these thresholds were met here*."

*Id*. at 2 (emphasis added). The WSJ article further noted that as part of the decision to shut down Google+ for consumers as well as a "broader review of privacy practices," Google "announced a sweeping set of data privacy measures." *Id*. at 1, 2. Referring to Google's October 8 Blog Post, the WSJ article stated that Google planned to "clamp down" on certain data outside developers can access through APIs. *Id*. at 3.

Three days after the publication of the Blog Post and WSJ article, two class action lawsuits were filed. This Court appointed a Lead Plaintiff on January 25, 2019, and consolidated the *Wicks* and the *El Mawardy*[3] actions. The *El Mawardy* complaint mentions both that Google promptly repaired the software bug and that Google found no evidence of misuse of data. The *Wicks* Complaint makes no mention of either fact. The Lead Plaintiff opted to designate the *Wicks* Complaint as the operative Complaint on February 14, 2019.[4]

---

[3] *El Mawardy v. Alphabet, Inc.*, No. 1:18-cv-05704 (E.D.N.Y. filed Oct. 11, 2018) ("*El Mawardy*").

[4] That Plaintiff opted to designate a 16 page placeholder complaint filed by another shareholder, as opposed to taking the time to prepare a more thorough complaint, speaks clearly of Plaintiff's gamesmanship, intended solely to get a preview of Defendants' theories on this
(continued...)

## THE APPLICABLE PLEADING STANDARDS GOVERNING THIS CASE

Plaintiff alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, which implements Section 10(b). Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made...not misleading." 17 C.F.R. § 240.10b-5(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007).

Plaintiff's claims are subject to the Reform Act's heightened pleading requirements. Congress enacted the Reform Act in response to "perceived abuses" of class action securities lawsuits, which included "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests," and "extortionate settlements." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006); *see also Tellabs,* 551 U.S. at 313 (the Reform Act was enacted as a "check against abusive litigation by private parties"). Congress' "control measures" include "[e]xacting" and "heightened pleading requirements." *Tellabs,* 551 U.S. at 313, 321.

The Reform Act mandates that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). A plaintiff must satisfy "formidable pleading requirements" including "exacting requirements for pleading 'falsity'" and "the pleading of specific facts" indicating why those statements were false. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55, 1070 (9th Cir. 2008).

A plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Scienter "refers to a mental state embracing intent to deceive, manipulate, or defraud." *NVIDIA*, 768 F.3d at 1053 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). Scienter in the Ninth Circuit requires deliberate recklessness or conscious misconduct. *Id.* In weighing

---

(...continued from previous page)
motion to dismiss and then amend the Complaint, rather than try to meet their stringent pleading burdens under the Private Securities Litigation Reform Act.

scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323-24. Factual allegations must be "compelling," "persuasive," "effective," and "powerful." *Id.* "A complaint will survive…only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. The "bar set by *Tellabs* is not easy to satisfy." *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018). Courts consider scienter allegations holistically. *Id.* at 855. The Reform Act mandates that if a complaint fails to meet the pleading requirements, the court "shall" dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

## ARGUMENT

### I. THE COMPLAINT FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.

#### A. Plaintiff Does Not Plead Particularized Facts Showing That The Risk Disclosures Were False Or Misleading.

The Complaint alleges that Defendants had a duty to disclose that Google's "[s]ecurity measures had failed recently and massively" and "did not shield personal user data against theft and security breaches." ¶ 5; ¶¶ 18, 28, 42, 45, 48, 50 (similar); *see also* ¶ 6 ("Google 'opted not to disclose the issue...in part because of fears that doing so would draw regulatory scrutiny and cause reputational damage'"); ¶ 31 (similar).

The Complaint does not, as it must, identify the source of this disclosure duty. The Supreme Court has long recognized that silence is not actionable absent a duty to disclose. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (no duty to disclose all facts unless statement 'affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."); *Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001) (securities laws do not create "a system of continuous disclosure"; "firms are entitled to keep silent...unless positive law creates a duty to disclose"). This principle applies to product defects. *See Panther Partners*, 538

1  F. Supp. 2d at 673 ("the failure to disclose that there was a defect does not amount to a basis for
2  liability under the securities laws").[5]

3  The only statements that the Complaint cites to as false or misleading are three risk
4  disclosures regarding the potential for data breaches from Alphabet's (1) 2017 Form 10-K filed
5  February 6, 2018, (2) the 1Q Form 10-Q filed April 23, 2018, and (3) the 2Q Form 10-Q filed
6  July 23, 2018.  These allegations fail for several reasons.

7  **2017 Form 10-K Filed February 6**.  The Complaint alleges as false and misleading
8  statements from Alphabet's risk factors in its 2017 Form 10-K for the year ending December 31,
9  2017:

> If our security measures are breached resulting in the improper use and disclosure of user data...our products and services may be perceived as not being secure...and customers may curtail or stop using our products and services....
>
> ...Our products and services involve the storage and transmission of users' and customers' proprietary information....  Any systems failure or compromise of our security that results in the release of our users' data...could seriously harm our reputation and...business....  We expect to continue to expend significant resources to maintain state-of-the-art security protections that shield against theft and security breaches.
>
> We experience cyber attacks of varying degrees on a regular basis.  Our security measures may also be breached due to...system errors or vulnerabilities....  Such breach...could result in significant legal and financial exposure...and a loss of confidence in the security of our products and services that could potentially have an adverse effect on our business.

18 Ex. 1 at 10-11; ¶¶ 25, 28.

19  Plaintiff contends that the 2017 Form 10-K was false and misleading because it "failed to
20  disclose that the Company's security measures already had failed recently and massively." ¶ 28.
21  This argument suffers from a fatal flaw.  Plaintiff does not explain how the 2017 Form 10-K,
22  filed on February 6, 2018, could disclose what Plaintiff concedes was not discovered until March
23  2018.  *See* ¶ 4 ("defendants discovered this glitch in March 2018").  The WSJ article, on which
24  Plaintiff extensively relies, states that "internal investigators discovered ...the issue" in "*March
25  2018.*"  Ex. 2 at 1-2 (emphasis added).  Alphabet *could not have disclosed an event* in the 2017

---

[5] *See Tesla*, 75 F. Supp.3d at 1041 ("Disclosure is required...only when necessary 'to make...statements made, in the light of the circumstances under which they were made, not misleading.'") (citations omitted).

Form 10-K *that it had not yet discovered*. *See Panther Partners*, 538 F. Supp. 2d at 672 (dismissing claim under Section 11 of Securities Act; "[i]t is obvious, of course, that a defect problem which does not emerge until January 2006 (at the earliest) cannot be disclosed in September 2005").[6] Indeed, the 2017 Form 10-K was filed more than two months before the start of the Class Period, the period during which the purported fraud occurred. *See* ¶ 1 (Class Period is April 23, 2018 through October 7, 2018).

The Court need look no further than Plaintiff's factual allegations to see that this timing problem is fatal and mandates dismissal of the allegations regarding the 2017 Form 10-K. Nonetheless, the Complaint also fails to plead how the 2017 Form 10-K's risk factors were false and misleading. Plaintiff alleges that the "company's security measures already had been breached." ¶ 28. Yet Plaintiff does not plead the existence of any "breach" such as an attack from a third party actor possessing malicious intent to use private data to its pecuniary or other benefit.[7] Instead, a bug impacted Google+ APIs.[8] Plaintiff's allegations as to the 2017 Form 10-K's risk disclosures fail.

**Form 10-Qs Filed On April 23 And July 23**. Plaintiff also challenges as false and misleading two additional statements: (1) Alphabet's statement on April 23, 2018 in its Form 10-Q for the period ending March 31, 2018, that "[t]here have been no material changes to our risk factors since our Annual Report on Form 10-K for the year ended December 31, 2017" (¶ 26); and (2) the same statement made on July 23, 2018, in the Form 10-Q for the period ending June 30, 2018. ¶ 27. Plaintiff alleges these statements were false and misleading because the "security measures already had failed recently and massively"; "damage to the Company's

---

[6] *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (plaintiff must allege "why the disputed statement was untrue or misleading when made").

[7] In fact, The Wall Street Journal initially reported a "data breach" in the headline of its print edition but subsequently specifically called out its error and corrected the "data breach" error in a "Corrections & Amplifications" note: "The phrase 'data breach' in a headline on an earlier version of this article could be interpreted as suggesting that data were misused." (Oct. 9, 2018)." Ex. 2 at 7.

[8] Google's 2017 Form 10-K nonetheless prudently warned that its security measures *could be* breached, resulting in "improper use and disclosure of user data." Ex. 1 at 10.

1 reputation and operating results and loss of customers...were imminent and inevitable; the "company did not maintain state-of-the-art security protections"; and the "company's security measures already had been breached." ¶ 28.

In making these allegations, Plaintiff ignores that the primary source on which he relies—the WSJ article—states that the bug had been fixed before the April 23 and July 23 statements. *See* Ex. 2 at 1, 2 ("A software glitch...gave outside developers potential access...between 2015 and March 2018"; soon thereafter Google "fixed the issue").[9] With the software bug already remediated before the April and July statements, Plaintiff does not explain how those statements were false and misleading. *See Read-Rite*, 2004 WL 2125883, at *5 ("plaintiffs fail to even adequately allege the mere existence of ...product defects which Read-Rite would not be able to overcome"; "plaintiffs do not allege why defendants could not have believed that these defects were minor or solvable"); *Heartland*, 2009 WL 4798148, at *5 (warning that computer systems could be penetrated by hackers not false by occurrence of data breach or that "unresolved security issues remain[ed]"). Nor does Plaintiff demonstrate that Alphabet's litany of risk factors was no longer appropriate or meaningful. *See Heartland*, 2009 WL 4798148, at *6 (risk factors did not state network was immune or that no breach had ever occurred; "that a company has suffered a security breach does not demonstrate that the company did not 'place significant emphasis on maintaining a high level of security'"); *Wozniak v. Align Tech.*, Inc., 850 F. Supp. 2d 1029, 1040-1041 (N.D. Cal. 2012) (dismissing claim based on nondisclosure of problems with software tools where statements did not create a misleading impression of tools' utility).[10]

---

[9] *See, generally*, Defendants' Request for Judicial Notice and Notice of Incorporation By Reference; *see also NVIDIA*, 768 F.3d at 1058 n.10 (because the complaint relies on a declaration and thus incorporates it by reference, the court "may properly consider the declaration in its entirety") (citing *Tellabs*, 551 U.S. at 322); *Tesla*, 75 F. Supp.3d at 1046 ("Court is 'not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint'") (citation omitted); *Colyer v. Acelrx Pharms, Inc.*, No. 14-CV-04416-LHK, 2015 WL 7566809, at * 3 (N.D. Cal. Nov. 25, 2015) ("Plaintiffs cannot selectively quote from one part of a publicly-available transcript and then object to Defendants' decision to provide the Court with the complete transcript.").

[10] *See Tesla*, 75 F. Supp.3d at 1043-44, 1046 (statements that no production battery ever caught fire and that Model S was "The Safest Car in America" were not materially misleading for failure to disclose that fires occurred in prototype batteries; statement in response to question about car fire in Washington was not false or misleading for failure to mention fire in Mexico).

Notably, as the Sixth Circuit has observed, "[r]isk disclosures...are inherently *prospective* in nature. They warn an investor of what harms *may* come to their investment." *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015). Accordingly, a "reasonable investor would be unlikely to infer anything regarding the current state of a corporation's compliance, safety, or other operations from a statement intended to educate the investor on *future* harms." *Id*. Alphabet's risk disclosure warned that a "systems failure or compromise of our security that results in the release of our users' data...could seriously harm our reputation and...business." Warning about potential systems failures or compromises is meaningful and serves an important function. *See Heartland*, 2009 WL 4798148, at *5 (cautionary warnings of possibility of breach and consequences "make clear that Heartland was not claiming that its security system was invulnerable"); *see also NVIDIA*, 768 F.3d at 1057, 1065 (noting relevance of warning in determining absence of scienter; "product flaws are very common in the semiconductor industry, and NVIDIA regularly takes measures to account for this, as reflected in its disclosures"). As with the 2017 Form 10-K, Plaintiff fails to plead credible allegations that Alphabet's April and July 2018 10-Qs were false or misleading.

### B. Plaintiff Does Not Plead Any Particularized Facts To Show That The Software Bug Was Material.

Even if the bug had not been timely remedied and Plaintiff did not have these fatal timing issues to contend with, Plaintiff also fails to articulate how his allegations demonstrate *materiality*. Notably, Plaintiff does not identify a single customer or user whose unauthorized information or data was misused. The WSJ article reported that, according to a Google spokesman, "the company considered 'whether we could accurately identify the users to inform, whether there was any evidence of misuse, and whether there were any actions a developer or user could take in response,'" concluding "none of these thresholds were met here." Ex. 2 at 2.

In addition, the Complaint does not allege that any of the data that was exposed was of an inherently sensitive financial nature, such as credit card number or bank account information.[11]

---

[11] *Cf. Heartland*, 2009 WL 4798148, at *1 (hackers under criminal indictment implanted "malicious software" and stole 130 million credit card and debit card numbers).

*See* ¶ 22 (alleging the exposed user data included profile information like gender or occupation); *Panther Partners*, 538 F. Supp. 2d at 673 (complaint is "silent about the rate at which chips were being returned as of that date, or the volume of the defect at that time").[12]

The Complaint similarly fails to plead that the bug was material to Google's business or materially affected earnings.[13] *See Panther Partners*, 347 F. Appx. at 621 (no allegation that "company knew that the defect rates were unusually high and therefore could materially affect earnings"); *Bondali*, 620 F. App'x at 491 (risk disclosure was not misleading; "[P]laintiffs have not alleged facts suggesting the issues with [suppliers] were so severe that they would have resulted in financial loss…. [Plaintiffs] allege neither the proportion of chicken possibly contaminated nor whether Liuhe and Yintai were two of a mere handful of suppliers or two of thousands of other suppliers"); *cf. NVIDIA*, 768 F.3d at 1050 (company announced charge of $150-$200 million to cover costs from defect in chipsets). In sum, there was no securities violation based on a failure of disclosure.

## II. THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

The Court need not consider Plaintiff's scienter allegations where, as here, Plaintiff has failed to plead any actionable statement.[14] Even had Plaintiff done so, the Complaint fails to plead "specific contemporaneous statements of conditions that demonstrate the intentional or the

---

[12] *See Guangyi Xu v. ChinaCache Int'l Holdings Ltd*., No. CV15-07952-CAS (RAOx), 2017 WL 114401, at *8 (C.D. Cal. Jan. 9, 2017) ("Allegations regarding undetermined technical problems are too vague to show the falsity [that transition to new cloud system] was an improvement"; plaintiff failed to identify "number of customers...facing undetermined technical issues"); *In re Autodesk, Inc. Sec. Litig*., 132 F. Supp. 2d 833, 840 (N.D. Cal. 2000) (complaint pleads "no facts regarding the specific nature of the bugs or the technical difficulties, or their impact on product development"); *Metzler*, 540 F.3d at 1070 ("a litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," is inadequate); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc*., 759 F.3d 1051, 1061-63 (9th Cir. 2014) (statement that "100% that hospitals were cutting back" omits "how many hospitals were cutting back, how much and when).

[13] For the year ended December 31, 2018, Alphabet earned revenues of $136.8 billion and net income of $30.7 billion. Ex. 3, Alphabet Inc. 2018 Form 10-K filed Feb. 5, 2019, at 26, 47.

[14] *See In re Netflix, Inc. Sec. Litig.*, No. 12-00225 SC, 2014 WL 212564, at *2 (N.D. Cal. Jan. 17, 2014) (dismissing for failure to plead falsity; "the Court did not need to address scienter because it found that Plaintiffs failed to allege a false statement"), *aff'd*, 647 F. App'x 813, 816 (9th Cir. 2016) (similar).

1  deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d
2  at 1066 (citation omitted).  Plaintiff's allegations fall far short and lack the "cogent and
3  compelling" force needed to raise a strong inference of scienter.  *Tellabs*, 551 U.S. at 324.

4  Plaintiff relies almost entirely on the contents of the WSJ article, whose information is
5  "secondhand."[15]  Plaintiff does not plead any non-generic factual allegations against the three
6  individual Defendants.  As a palpably inferior substitute, the Complaint simply calls out their
7  respective titles: Messrs. Page (¶ 14, Alphabet's CEO), Pichai (¶ 15, Google's CEO), and Ms.
8  Porat (¶ 16, CFO).  Plaintiff then resorts to alleging that Defendants Page and Porat signed
9  certifications to the 1Q and 2Q 2018 Form 10-Qs pursuant to the Sarbanes-Oxley Act.  ¶ 29.
10 Courts routinely reject reliance on SOX certifications.  *See Zucco Partners, LLC v. Digimarc*
11 *Corp.*, 552 F.3d 981, 1003-04 (required certifications add nothing to scienter calculus)
12 (collecting cases).  Plaintiff also fails to plead any of these individuals had a motive to commit
13 the alleged fraud.

14 The decision in *NVIDIA* is instructive.  NVIDIA allegedly knew as early as 2006 that
15 semiconductor chips accounting for 80% of its revenue were cracking.  After switching to a
16 different solder material, its customer HP reported damage and cracking.  NVIDIA disclosed
17 receipt of some limited claims in May 2008 and ultimately announced in July it was taking a
18 charge of $150-$200 million against its cost of revenue arising from defects in its dominant
19 semiconductor chip sets.  Notwithstanding evidence of attempts to remedy the defect, reliance on
20 17 confidential witnesses, industry experts and other lawsuits, and the CEO's sales of stock, the
21 District Court dismissed on scienter grounds and the Ninth Circuit affirmed.  Plaintiff failed to
22 plead advance knowledge of the scope of financial liability and that the company "intentionally
23 misled investors, or acted with deliberate recklessness, by not disclosing the problem sooner."
24 768 F.3d at 1056-1057, 1059.  Instead, the more compelling inference was that NVIDIA was
25 "first investigating the root cause, and then the scope, of the Material Set Problem" and upon

---

[15] *See NVIDIA*, 768 F.3d at 1058 (reporter's "information is secondhand.")

determining its "liability would exceed its normal reserves, NVIDIA disclosed the problem to investors." *Id*. at 1056.[16]

The facts here pale in comparison to *NVIDIA's* long known defect in its primary chipsets, resulting in an enormous charge of $150-$200 million, made necessary because the reserve was insufficient. Google, acting in good faith to proactively review Google's policies and third-party developer access to data, discovered the software bug that impacted Google+ APIs and implemented a speedy repair.[17] The Complaint does not allege that the consumer data that was exposed was sensitive financial information, that there was an intentional breach by a bad or malicious actor, or that there was misuse of data. That Google did not disclose the event earlier, where the defect was quickly remediated and without discovery of damage to consumers, does not smack of fraud. *See Heartland*, 2009 WL 4798148, at *8 (no scienter; no facts that defendants "believed that Heartland's security systems were deficient or that any problems created by the SQL attack had not been addressed").[18] In sum, because Plaintiff does not allege a materially false or misleading statement or a strong inference of scienter, the Section 10(b) claim must be dismissed.[19]

## CONCLUSION

For the reasons stated, the Complaint should be dismissed.

---

[16] *See Acelrx*, 2015 WL 7566809, at * 12 (no scienter; defendants were "actively trying to determine the cause behind the optical system error rate" and "delayed disclosure in order to investigate the scope of this issue").

[17] *See Zamir v. Bridgepoint Educ., Inc.*, No. 15-CV-408 JLS (DHB), 2018 WL 1258108, at *10 (S.D. Cal. Mar. 12, 2018) (plan to improve internal controls shows that "Defendant recognized issues and attempted to correct them" and raises no inference of scienter); *accord*, *In re Siebel Systems, Inc. Sec. Litig.*, No. C 04-0983 CRB, 2005 WL 3555718, at *5 (N.D. Cal. Dec. 28, 2005) (no scienter inferred "because a software company releases a new improved version of a product"; no allegation that "a customer complained [to management] that Siebel 7 had an 'abnormally large number of bugs'"), *aff'd Wollrab v. Siebel Sys., Inc.*, 261 F. App'x 60 (9th Cir. 2007).

[18] *See Read-Rite*, 2004 WL 2125883, at *4 (allegation that defendants knew of insurmountable product defects based on attendance at meetings failed "to plead falsity or scienter with adequate specificity" in absence of "allegation of the magnitude or severity of the technical challenges existing at the time each statement was made").

[19] The failure to state a claim under Section 10(b) requires dismissal under Section 20(a). *See Intuitive*, 759 F.3d at 1064 n.6; *SolarCity*, 884 F.3d at 858 (same).

Dated: March 22, 2019

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Boris Feldman
      Boris Feldman

Attorneys for Defendants
Alphabet Inc., Lawrence E. Page,
Sundar Pichai, and Ruth M. Porat