July 15, 2022

<u>VIA EFILING</u>

Magistrate Judge Donna M. Ryu
United States District Court for the Norther District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

      Re:   *In re Alphabet Inc. Sec. Litig.*,
              No. 4:18-cv-06245-JSW-DMR

Dear Judge Ryu:

      The parties have met and conferred by telephone (most recently on July 8, 2022) but have been unable to resolve their disagreements. The relevant case management deadlines are as follows: (1) the fact and expert discovery cut-off dates are September 25, 2023 and January 31, 2024, respectively; (2) the deadline and hearing date for dispositive motions are March 29, 2024 and August 2, 2024; (3) the motion, opposition, and reply deadlines for class certification, as well as the hearing date are June 21, 2022, August 22, 2022, October 6, 2022, and November 4, 2022, respectively; (4) the Pretrial Conference and Trial are scheduled on October 7, 2024 and October 28, 2024.

**DEFENDANTS' POSITION:** On June 29, 2022, this Court issued an unambiguous order (ECF No. 106)—the parties must engage in a "productive" and "meaningful" meet and confer before asking this Court to adjudicate discovery disputes related to Plaintiff's request for out-of-the-gate apex depositions of Google's co-founder (Page), CEO (Pichai), and former VP of Engineering (Ben Smith). Before the parties could even discuss, however, Plaintiff made clear its unwillingness to engage, informing Defendants just two days later of its intention to notice the deposition of *yet another apex employee*, Alphabet's & Google's CFO Ruth Porat. Still, Defendants promptly offered to confer in good faith, in particular to discuss ways in which Plaintiff—as the law requires— could exhaust less intrusive discovery methods (e.g., document review, interrogatories) related to these individuals before deposing them. Defendants reiterated they were not refusing to provide testimony, but merely that it was premature. Plaintiff refused to discuss. Instead, Plaintiff made —on the parties' only call after the Court's order—its "final offer": (1) Page, Pichai and Smith must all be deposed by September 26, 2022[1] and (2) if Defendants agreed to proceed on a *second* 30(b)(6) deposition within 45 days, it would notice Porat's deposition for a date after that. Defendants could not accept Plaintiff's take-it-or-leave-it offer when less intrusive discovery remains available and untested at this early stage.[2] To avoid further, needless motion practice, on July 13, 2022, Defendants offered that these witnesses could be deposed starting March 1, 2023 if Plaintiff makes the necessary showings. Plaintiff again refused. Once again, the parties find themselves before the Court when they needn't be.

When a party seeks an apex deposition, "courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case *and* (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (emphasis added). Here, the Court is presented with the prototypical case warranting application of that rule. First, Plaintiff seeks depositions for four (up from the original three) of the senior-most executives of a $1.5 trillion company that employs more than 150,000 people. These executives are quintessential apex employees: Page is a co-founder and board member of Alphabet (ECF No. 62 ¶11); Pichai is the CEO (*Id* ¶12); Porat is the CFO (*Id* ¶30); and Smith is a 22-year Google veteran who was a VP of Engineering managing 25 teams and reporting directly to CEO Pichai (he then served as a Google Fellow and advisor to the Office of the CEO, and continues to serve as a Google Advisor).[3]

---

[1] Plaintiff purports to link this date to its class certification reply. But Plaintiff offers no reason why these apex depositions are necessary for class certification discovery. Nor does it explain why less intrusive discovery would be insufficient. Further, Plaintiff incorrectly presumes it is entitled to incorporate new evidence on reply in support of its class certification motion. *See, e.g.*, *Torres v. Wells Fargo Bank, N.A.*, 2019 WL 716790, at *2 (C.D. Cal. Sept. 27, 2019) (invoking, in the context of class certification briefing, the "well-established rule" that courts should not consider new arguments and evidence on reply).

[2] In complaining that no documents have been produced, Plaintiff ignores that the Parties have yet to execute or file a stipulated protective order. Defendants have been reviewing documents in response to Plaintiff's requests, and will begin production when a protective order is executed.

[3] Although Smith is no longer VP of Engineering, that makes no difference for the purposes of the apex rule. *See, e.g.*, *Conforto v. Mabus*, 2014 WL 12560881, at *7 (S.D. Cal. Sept. 24, 2014) (former high-ranking employees "continue to be protected by the apex doctrine").

*No Unique First-Hand Knowledge.*  Plaintiff has never shown that these apex employees have unique first-hand knowledge regarding the facts currently at issue in this litigation—nor could it at this nascent stage of discovery.

None of Page, Pichai, Porat, or Smith is alleged to have any unique first-hand knowledge about the only two alleged "misstatements" that remain in the case: risk factor language from two 2018 10-Qs.  In fact, there are no allegations connecting Pichai or Smith with the 10-Qs at all.  Further, as to Page, he merely signed SOX certifications accompanying the 10-Qs (and Plaintiff alleges Porat is referenced therein).  (Answer, ECF No. 93 ¶¶43, 49.)  SOX certifications alone are not a basis for 10b-5(b) "speaker" liability, *see Wanca v. Super Micro. Computer, Inc.*, 2018 WL 3145649 (N.D. Cal. Jun. 27, 2018), and even if they were, the certification surely does not suggest *unique* knowledge about those statements.  *See Symantec Corp. v. Zscaler, Inc.*, 2019 WL 8331428, at *1 (N.D. Cal. Sept. 19, 2019) (statements about "trend that any number of people could testify to, are not enough to justify an apex deposition.").

The connection between the apex employees and the 10b-5(a) and (c) liability claims is more tenuous.  The Amended Complaint summarily alleges that Pichai and Page were "briefed" on the bug and "approve[d]" a plan to shut down the affected product.  (ECF No. 62 ¶¶40-41.)  Plaintiff thus alleges that Pichai's and Page's knowledge (if any) was *not* unique as they were informed of the facts at issue by others.  The Amended Complaint does not even mention Smith, referring only to a blog post about the bug for which he was the listed author.  (*Id.* at ¶58.)

*No Exhaustion of Less Intrusive Discovery Methods.*  Plaintiff *does not argue* that it has exhausted less intrusive discovery methods.  Nor could it:  Plaintiff served the Page, Pichai, and Smith deposition notices *in the first weeks of a 16-month discovery period.*  Tellingly, Plaintiff has made no attempt to depose any more junior employees who are alleged to have significant, direct knowledge of the facts at issue.  (*See* ECF No. 62 ¶38 ("[a] group of over 100" Google employees involved in discovering bug).  It is difficult to ignore the impression that Plaintiff is using these depositions in an abusive manner.  *See, e.g.*, *In re TFT-LCF (Flat Panel) Antitrust Litig.*, 2011 WL 10967617, at *1 (N.D. Cal. Aug. 1, 2011) ("'apex depositions' should be carefully scrutinized to avoid the potential for abuse."); *see also Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG, ECF No. 87, at 2 (N.D. Cal. May 27, 2021) (applying apex rule where court could not "shake the feeling that these witnesses were chosen *because* these depositions would be burdensome, inconvenient, and highly visible to the company").

*The Apex Rule Is Grounded in the Federal Rules.*  Rather than argue the apex rule is satisfied, Plaintiff takes the remarkable position that it simply does not apply in a securities fraud case like this one.  Not so: the doctrine is grounded in Rule 26, which applies to all civil cases.  *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (as apex depositions create potential for abuse, courts exercise discretion to "limit discovery where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'"(quoting Rule 26)).  Nor are allegations of scienter a basis to ignore apex principles.  Such a rule would allow senior executives to be dragged into depositions at the outset of any case with a scienter claim, vitiating apex protections in a wide range of cases.  That is not the law.  *See, e.g.*, *Estate of Silva v. City of San Diego*, 2021 WL 2111613, at *4-5 (S.D. Cal. Jan. 21, 2021)

(granting protective order precluding deposition of apex defendant even though his state of mind was relevant because plaintiffs made no showing that they sought to access information through written discovery and depositions of other witnesses).

There are practical reasons to wait to ensure these depositions are necessary. Plaintiff faces serious legal hurdles on class certification such as establishing the predominance of common questions of law and fact. (ECF No. 94 at 9.) And Defendants are cooperating with Plaintiff's less-intrusive discovery, despite the risk of wasted resources on merits discovery prior to a class-certification decision. Among other things, Defendants provided robust document-production proposals, have offered 30(b)(6) testimony, and are moving forward with the deposition of a fifth employee. To be clear, Defendants' position has never been that the apex employees are shielded from depositions, only that the apex rule renders the depositions premature.

Accordingly, consistent with their final offer of compromise, Defendants ask that the Court issue a protective order, holding that these four witnesses may only be noticed for testimony on a date on or after April 1, 2023, provided Plaintiff makes the necessary showing of unique knowledge and exhaustion of less intrusive methods of discovery, as required by law.

**Rhode Island's Position**: The issue before the Court is a simple one: may Defendants invoke the so-called "apex doctrine" to postpone indefinitely the depositions of the two primary perpetrators of the securities fraud charged here (defendants Pichai and Page) and the individual who wrote Defendants' response to a previously concealed ongoing data-privacy crisis at Google (Ben Smith)? No court has ever applied the apex rule to named defendants in a case brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and no defendant has previously made such an unreasonable argument.[4]

As the Ninth Circuit recognized in this very case, "senior controlling officers" are generally the only individuals with the opportunity to commit these offenses, so their personal awareness, motivations, actions, and intentions are what these cases are all about. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) ("'[M]erely "reasonable" or "permissible"' inferences are ***insufficient***.") (citations omitted and emphasis added), *cert. denied*, __ U.S. __, 142 S. Ct. 1227 (2022); 15 U.S.C. §78u-4(b)(3)(B). But the PSLRA already protects such "senior controlling officers" from unnecessary impositions by automatically staying discovery until after a court has determined that their culpability and scienter have been alleged so specifically and cogently as to clear the PSLRA's high pleading bar. *Id.* at 705-07.

---

[4]   The closest Rhode Island could find was a 2005 non-PSLRA state court case from Florida. *Citigroup Inc. v. Holtsberg*, 915 So. 2d 1265 (Fla. Dist. Ct. App. 2005). Even there, the prospective deponents (Citigroup's senior officers) were not named defendants or alleged perpetrators of the alleged fraud, which concerned an MCI WorldCom investment and a Citigroup analyst's allegedly dishonest analyses. *Id.* at 1270. Still, the court rejected the defendants' invocation of the apex doctrine, explaining that the plaintiffs' allegations "can be established only by persons who can testify to Citigroup's own intent, namely, its senior officers, Weill and Prince. Thus, their conduct and knowledge are highly relevant to the case." *Id.*

Here, the Ninth Circuit has already made this determination as to Page and Pichai:

> The complaint's specific allegations, taken as a whole, raise a strong inference that Page, and therefore Alphabet, knew about the Three-Year Bug, the Privacy Bug, and the Privacy Bug Memo, and that Alphabet intentionally did not disclose this information in its 10-Q statements.
>
> \* \* \*
>
> The complaint also alleges that Pichai approved a cover-up to avoid regulatory scrutiny and testimony before Congress. The complaint alleges that "key officers and directors," including Page and Pichai, "had decided to conceal all of this information from everyone outside the Companies." This decision to conceal was calculated to "buy time" by avoiding putting Google in the spotlight alongside the Facebook-Cambridge Analytica scandal and at the time of heightened public and regulatory scrutiny. As it turned out, Alphabet successfully bought itself about six months of time between the April 2018 decision not to disclose and the October 2018 publication of the *Wall Street Journal* article. Again, the competing inference that Alphabet knew of this information but was merely negligent in not disclosing it is not plausible.

*Id.* at 705-07.[5]

It is not a mere possibility, but a fact that Pichai and Page have unique, firsthand knowledge as to their own decisions to conceal information and their own scienter, **which are express elements of Rhode Island's claims against them**. Yet, even in cases that do not have to clear the PSLRA's high pleading hurdle and have not been unanimously upheld by the Ninth Circuit as to the "apex" witnesses themselves, a mere possibility is enough. *See, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at \*5 (N.D. Cal. Mar. 6, 2014) ("[T]he court finds that Shinobe may possess unique, firsthand knowledge relevant to this case, and that Plaintiffs do not seek to depose Shinobe for purposes of abuse, harassment, or undue burden."); *Elantech Devices Corp. v. Synaptics, Inc.*, 2008 WL 11390835, at \*2 n.1 (N.D. Cal. Aug. 11, 2008)

---

[5] Smith is not a defendant, but he is also not an executive, officer, or manager. He was the sole author of the blog post comprising much of the revelations at issue here. Only Smith can testify as to the bases for all that his blog post revealed, including the insurmountable data-security challenges Page and Pichai had decided to conceal. *See* ECF 55-4 at 1-2, *Alphabet*, 1 F.4th at 697, 706. He is the only witness who can testify about, *inter alia*, when he learned of each revelation in his blog post, how he learned it, with whom he discussed each aspect of his blog, and on whom he relied for what information. He should also be able to testify about the scope of Google's data-security crisis and its responses, which are critical damages-related issues. The scope of Google's data-security problems could be important to Rhode Island's response to Defendants' long-foreshadowed price-impact defense to class certification which is due on October 6, 2022. ECF 55-4 at 3-6 (Smith's blog post extended far beyond Google+, including Google Drive, Gmail, and even calls and texts from Android phones).

(same).[6]  These frauds are not drawn up in mailrooms and executed in vanpools.  Only the most senior officers can commit these frauds, so of course they are the most essential witnesses.  What Pichai and Page seek is a new form of "sword-and-shield" injustice, where "senior controlling officers" use their unique positions of power to commit securities fraud, and then use the same positions to shield themselves from discovery and accountability.

Lead Counsel have decades of experience investigating criminal and civil fraud cases and prosecuting them through trial.  In counsel's judgment, an investigative plan to obtain direct evidence from the primary perpetrators prior to Rhode Island's reply brief in support of class certification and several months before the deadline to amend the complaint is essential.  The alternative of cobbling together circumstantial evidence from a hodgepodge of Google's 150,000 employees would be impractical to the point of futility, which explains Defendants' unprecedented invocation of the so-called apex rule to dictate how Rhode Island builds its case.

Rhode Island gave Defendants months of advance notice of its need to depose Pichai, Page, and Smith.  As a final offer of compromise, Rhode Island asked for any dates so long as the latest is at least ten days before the deadline for Rhode Island's class certification reply brief.  Defendants, who have yet to produce a single document, refused.  Rhode Island respectfully urges the Court to level the playing field by allowing it to exercise its discovery rights under the Federal and Local Rules to prepare its case by rejecting Defendants' empty ambiguous statements about future possibilities and requiring specific dates to complete these depositions prior to October 6, 2022 (nearly four years after this case began).

<div style="margin-left: 50%;">

Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP

*/s/ Jason A. Forge*
Jason A. Forge

JASON A. FORGE
MICHAEL ALBERT
J. MARCO JANOSKI GRAY
TING H. LIU
NATALIE F. LAKOSIL
650 West Broadway, Suite 1900

</div>

---

[6]  *See also Mills v. Wal-Mart Stores, Inc.*, 2007 WL 2298249, at *2 (W.D. Ark. Aug. 7, 2007) ("As these deponents may have personal information concerning the investigation surrounding the possible shredding of documents relevant to the Coughlin case, the Court finds that these depositions clearly fall outside the realm of the 'apex deposition' doctrine."); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart, Inc.*, 2017 WL 5068161, at *2 (W.D. Ark. May 11, 2017) (rejecting application of apex doctrine to Wal-Mart's current CEO, ***who was not a defendant, not an alleged perpetrator of fraud, and whose intent was not at issue***, due to his "direct and personal involvement in the acts and issues in this case").

San Diego, CA 92101
Telephone: 619/231-1058
jforge@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiff


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Benjamin M. Crosson (with permission)*
Benjamin M. Crosson

IGNACIO E. SALCEDA
BENJAMIN M. CROSSON
STEPHEN B. STRAIN
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
isalceda@wsgr.com
bcrosson@wsgr.com
sstrain@wsgr.com

FRESHFIELDS BRUCKHAUS DERINGER US LLP
BORIS FELDMAN
DORU GAVRIL
DREW LIMING
ELISE LOPEZ
2710 Sand Hill Road
Menlo Park, CA 94025
Telephone: (650) 618-9250
boris.feldman@freshfields.com
doru.gavril@freshfields.com
drew.liming@freshfields.com
elise.lopez@freshfields.com

Attorneys for Defendants Alphabet Inc., Google LLC, Lawrence E. Page, Sundar Pichai, Keith P. Enright and John Kent Walker, Jr.

- 7 -

## CERTIFICATE PURSUANT TO LOCAL RULE 5-1(h)(3)

I, JASON A. FORGE, am the ECF User whose identification and password are being used to file this document. Pursuant to Local Rule 5-1(h)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: July 15, 2022

<div style="text-align:right">
<i>/s/ Jason A. Forge</i><br>
JASON A. FORGE
</div>