UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION, | Case No. 18-cv-06245-JSW <br><br> **ORDER GRANTING MOTION TO SUPPLEMENT THE CONSOLIDATED AMENDED COMPLAINT AND STRIKING MOTION TO CERTIFY THE CLASS** <br><br> Re: Dkt. Nos. 102, 136 |

Now before the court is the motion to supplement the consolidated amended complaint and the motion to certify the class both filed by Lead Plaintiff State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of Rhode Island ("Plaintiff"). For the reasons stated, the Court GRANTS the motion to supplement the complaint and STRIKES the motion to certify the class.

**BACKGROUND**

According to the allegations in the consolidated amended complaint, in March 2018, Google learned that a software bug had allowed third-party developers to access private user-profile data in the Google+ social-networking platform. Plaintiff alleges that Google failed to detect the bug and their belated discovery and investigation of the bug also revealed other security vulnerabilities in the Google+ platform. In or around April 2018, Google's legal staff prepared a memo that outlined the internal debate regarding possible disclosures of security and privacy

issues, which included warnings that disclosure would likely trigger "immediate regulatory interest," result in defendants "coming into the spotlight alongside or even instead of Facebook despite having stayed under the radar throughout the Cambridge Analytica scandal" and "almost guarantee[] Sundar [Pichai would] testify before Congress."  (Consolidated Amended Complaint ("CAC") at ¶ 38.)

Despite the internal awareness of data vulnerabilities on the Google+ platform, Plaintiffs allege that Alphabet chose to conceal the issues by omitting any reference in the company's public filings in the April 2018 and July 2018 Forms 10-Q.  Six months later, the *Wall Street Journal* published an expose entitled "Google Exposed User Data, Feared Repercussions of Disclosing to the Public."  Both the public and Congress's reactions to the article and revelations were swift, with media reports critical of Google's business model in "hiding a potentially dangerous breach for six months."  (*Id.* at ¶ 66.)  Plaintiffs originally alleged that as a result of the misleadingly incomplete statements and omissions to the public, Plaintiff were harmed by resulting damage to the share price in October 2018.

Upon remand from Plaintiff's appeal of the dismissal of the claims, the Ninth Circuit found that two of the statements made by Alphabet in its April 2018 and July 2018 Forms 10-Q omitted material facts necessary to make the statements not misleading.  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 693 (9th Cir. 2021, *cert denied*, __ U.S. __ , 142 S. Ct. 1227 (2022).  The Ninth Circuit observed that "the Privacy Bug Memo was not limited to discussing the discovery of the software glitch that had been remediated because it highlighted additional security vulnerabilities that were so significant that they allegedly led to Google's decision to shut down the Google+ consumer platform."  *Id.* at 702.  The appellate court concluded that these public statements omitted material facts and that "these statements are relevant and were made while Google and Alphabet allegedly chose a strategy of concealment over disclosure."  *Id.* at 708.  Accordingly, although the Ninth Circuit affirmed dismissal of the Rule 10b-5(b) statement liability for the ten remaining statements, it reversed the Court's dismissal of the April 2018 and July 2018 Forms 10-Q omissions and reinstated Plaintiff's Rule 10b-5(a) and (c) scheme liability claims, as well as the corresponding Section 20(a) claims.

Now before the Court on remand, Plaintiff moved for certification of the class pursuant to the Federal Rule of Civil Procedure 23. In the opposition to the motion for class certification, Alphabet contends that the damages Plaintiff now alleges for the subsequent decline in the stock price – the April 30, 2019 drop – does not appear in the consolidated complaint. Rather, Alphabet contends, "[i]f Plaintiff wishes to embrace a new legal theory, it must first amend its Complaint." (Opposition to Class Cert. Motion at 2.)

In a separate motion, Plaintiff seeks to supplement the complaint to add a subsequent damages event, occurring after the filing of the original complaint, for decline in the stock price in late April 2019. The Court shall address other relevant facts in the remainder of its order.

## ANALYSIS

**A.      Legal Standard on Motion to Supplement.**

Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); *see also Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874 (9th Cir. 2010) (noting that "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed"). "While leave to permit supplemental pleading is 'favored,' it cannot be used to introduce a 'separate, distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely,* 130 F.3d 400, 402 (9th Cir.1997) (citations omitted). Supplementation is generally favored as "a tool of judicial economy and convenience." *Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir. 1988). "To determine if efficiency might be achieved, courts assess 'whether the entire controversy between the parties could be settled in one action.'" *Id.* (internal citation and ellipses omitted). "The clear weight of authority ... in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." *Id.* at 473; *see also Copeland v. Lane,* 11-cv-1058-EJD, 2013 WL 1899741, at *5 (N.D. Cal. May 6, 2013) ("Matters newly alleged in a supplemental complaint must have some relation to the claims set forth in the original pleading.").

3

1  "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)." *Paralyzed Veterans of America v. McPherson,* No. C 06–4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008). The five factors commonly used to evaluate the propriety of a motion for leave to amend (and thus, a motion to supplement) are: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). "[T]he consideration of prejudice to the opposing party … carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice or a "strong showing" of any other *Foman* factor, there is a presumption in favor of granting leave to supplement. *Id.* "Rule 15 advises the court that 'leave shall be freely given when justice so requires,'" and [t]his policy is 'to be applied with extreme liberality.'" *Id.* at 1051.

**B.    Leave to Supplement.**

Plaintiff seeks to supplement the complaint to add to the loss causation/economic loss section to add facts regarding the drop in stock price in late April 2019 following the filing of the consolidated complaint in this matter. Plaintiff contends that the business risk posed by the "significant and extensive remedial measures" as part of Alphabet's response to "the events described in the *WSJ* article" materialized a few days after the filing of the consolidated amended complaint in this matter. (CAC ¶ 76.) On April 29, 2019, Alphabet announced that "product changes" had had an adverse effect on its business, resulting in stricter permissions and "additional controls" necessary "to combat the misuse of our platform and enforce our content policies." (*Id.* at ¶¶ 47, 76.) The enhancement of user's data privacy and reduction of the misuse of other platforms had a negative effect on the effectiveness and volume of advertisements. The effect of diminished advertising revenues and increased costs devoted to engineering resources contributed to the drop in stock value. In their motion to supplement the complaint, Plaintiff contends that on April 30, 2019, Alphabet's Class A and Class C shares fell as a result of the materialization of risks posed by the remedial measures related to "the events described in the *WSJ* article." (*Id.* at ¶ 76.)

First, the delay in filing the motion to supplement is explained by the time taken to the appeal of this Court's order granting Alphabet's motion to dismiss. There is no undue delay post-remand and the Court finds this factor weighs in favor of supplementation. The Court does not find that Defendant will sustain significant prejudice resulting from delay in filing an amended complaint.[1]

Next, Alphabet contends that Plaintiff proposes the amendment in bad faith. Alphabet claims that with the evidence it has recently produced, it is clear that the product changes that contributed to a slowdown in revenue growth in April 2019 had no connection to the data privacy issue. Alphabet also argues that Plaintiff only sought to amend their complaint once it had received the opposition to the pending motion for class certification. However, Plaintiff has the prerogative to test the evidence and had, in earlier filings, asserted that damages were related to both immediate and belated stock price declines. The Court does not find bad faith. *See, e.g., Solaria Corp. v. GCL System Integration Tech. Co., Ltd.*, 2022 WL 279870, at *3 (N.D. Cal. Jan. 31, 2022 (finding no bad faith in seeking to supplement a claim where the underlying violation was pled in the original complaint supplemented by additional violations after filing of the initial complaint).

Lastly, Alphabet contends the amendment would be futile. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Service Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that futile amendments should not be permitted). To determine futility of amendment, the Court employs the motion to dismiss standard in order to assess whether the proposed amendment is "enough to make out a plausible claim for relief." *SBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 578 (1st Cir. 2011); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (holding that the "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficient of a pleading challenged under Rule 12(b)(6).") Under this standard, the Court must accept all factual allegations as true and construe

---

[1] As a result of the amendment of the complaint, however, the Court finds that the motion to certify the class is premature and it is thereby STRICKEN without prejudice to re-filing once the pleadings are set. In addition, the Court LIFTS the stay of discovery in this matter.

those allegations in the light most favorable to the plaintiff. *Telltabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-34 (2007). A proposed amendment may be found to be futile only where "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller*, 845 F.2d at 214. "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).

      Alphabet contends that the proposed amendment to the complaint would be futile because they allege that the facts, including a recently-disclosed set of declarations, do not support the contention that the stock price decline was related in any way to the earlier privacy concerns issue. The authority on a motion to amend clearly prohibits this Court from relying on "material outside of the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (holding that district court erred in relying upon extrinsic declaration submitted by defendants to dismiss plaintiff's claim). Plaintiff alleges in its amendment the factual circumstances to explain how "[b]y the end of the first financial quarter of 2019, the risks from remedial measures related to the events described in the *WSJ* article … (of which the Google+ crisis was the tipping point) materialized" and how an "adverse effect on Alphabet's revenues was a materialization of th[ose] risks." (Proposed Supplemental Complaint at ¶ 82(b).) Taking as true the facts as alleged in Plaintiff's proposed amended complaint regarding the later price drop, the Court finds the claims are not facially implausible. *See In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings where the plaintiff's cases can be rejected on evidentiary grounds.").

      The Court finds that Plaintiff has met the liberal pleading standard under Rule 15. *See Eminence Capital*, 316 F.3d at 1051 ("Rule 15 advises the court that 'leave shall be freely given when justice so requires,'" and [t]his policy is 'to be applied with extreme liberality.'"). The Court finds the factors used to determine the propriety of a motion to supplement the complaint

6

weigh in favor of Plaintiff. The Court finds there was no undue delay, bad faith, or significant prejudice to Alphabet and the amendment is not futile. Accordingly, the Court GRANTS Plaintiff's motion to supplement the complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to supplement the complaint and STRIKES Plaintiff's motion to certify the class. Further, the Court LIFTS the stay on discovery.

**IT IS SO ORDERED.**

Dated: February 28, 2023

JEFFREY S. WHITE
United States District Judge