ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
MICHAEL ALBERT (301120)
J. MARCO JANOSKI GRAY (306547)
TING H. LIU (307747)
SARAH A. FALLON (345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION | Master File No. 4:18-cv-06245-JSW |
| | CLASS ACTION |
| This Document Relates To: | SUPPLEMENT TO THE CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| ALL ACTIONS. | |

1    Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of Rhode Island hereby supplements the Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF 62) (the "Complaint").

Through this supplement, ¶82 of the Complaint is supplemented with the following subparagraphs:

(a) As explained above, defendants wanted to avoid Pichai being called before Congress in the spring of 2018 (*see, e.g.*, ¶¶38, 40), when the Facebook-Cambridge Analytica scandal was peaking, because legislators' questions would likely expose that Google's data security and management were less trustworthy than defendants had led the world to believe, including advertisers'/developers' overly broad access across all products and lax controls to guard against Cambridge Analytica-like misuse of Google's platforms.  This would dramatically increase the risk that Congress would impose sweeping privacy and controls regulations along the lines of the European Union's GDPR and force Alphabet to dramatically strengthen its data collection, use, and content moderation policies to address the data misuse implications exposed by the Cambridge Analytica scandal.  So defendants bought time and concealed everything until October 8, 2018, when they had no choice.  *See* ¶¶56-57 above.  By simultaneously announcing the shutdown of Google+ and extensive remediation plans across all other products (*see* ¶76 above), Google was able to avoid a GDPR-like mandate, but as defendants had warned in Alphabet's Form 10-K Annual Report for 2018 (*see* ¶72 above), "changes to our data privacy practices . . . may affect the type of ads and/or manner of advertising that we are able to provide which could have an adverse effect on our business."

(b) By the end of the first financial quarter of 2019, the risks from the remedial measures related to the events described in the *WSJ* article (*see* ¶76 above) (of which the Google+ crisis was the tipping point) materialized.  On April 29, 2019, the big news of Alphabet's first quarter financial results was that "product changes" had had an adverse effect on its business.  An adverse effect on Alphabet's revenues was a materialization of the risks posed by the remedial measures related to the events described in the *WSJ* article.  As described above in ¶76 and the Project Strobe October 8, 2018 blog post referenced therein, responsive product changes included stricter Google Account permissions to curtail advertisers'/developers' overly broad access to Android device and Google Account data, and "additional controls and update[d] policies across more of our APIs," all of which spanned the full spectrum of Google's products, including, but not limited to, Android, Google Maps, Google Photos, Google Reviews, Google Search, as well as the entire G Suite and YouTube.  By the end of the first financial quarter of 2019, these belated remedial measures, including stricter permissions, controls, and policies enhanced users' data privacy and offered more protection against Cambridge Analytica-like platform misuse, but diminished the volume and effectiveness of advertisers' ads (for example, belated changes in controls/algorithms to avoid using extremist content to increase user engagement).  This hurt advertising revenues, which were Alphabet's lifeblood, accounting for over 85% of revenues.  Such responsive product changes also increased costs and hurt revenues, including by diverting engineering resources from revenue-enhancing product changes.

(c) On April 30, 2019, Alphabet's Class A and Class C shares fell $4.86 and $4.96 per share, respectively, which drops were caused, in whole or in part, by the revelation of the consequences of the remedial measures related to "the events described in the *WSJ* article." On May 1, 2019, as the market continued to absorb the consequences of these remedial measures, Alphabet's Class A and Class C shares declined $1.28 and $1.02 per share, respectively.

(d) Both on the day of the price drop and in the weeks that followed, analysts noted that privacy/controls-related product changes were hurting Google's business:

- "Shares of Alphabet dropped 7.5 percent after hours, setting them up for the biggest one-day drop since falling 8 percent in October 2012. They had closed Monday at a record-high of $1,296.20. . . . The company is facing continued pressure from advertisers to tighten controls on its fast-growing YouTube video service so that they not appear to be sponsoring adult or offensive content. . . . Expenses have surged faster than revenue for much of the past two years as it adds data centers, offices and YouTube content licenses, concerning some investors amid increased scrutiny on the company's privacy practices and the advertising restrictions at YouTube. More advertising controls are coming to YouTube in the coming weeks that could affect sales, Pichai said. . . . And Google's costs could jump further if governments globally follow through on threats to rein in the ability of apps to track users for advertising purposes. Other regulators have discussed forcing companies to step up monitoring of user content." Arjun Panchadar & Paresh Dave, *UPDATE 5 - Google parent's shares dive as YouTube changes, competition hurt revenue*, Reuters, Apr. 29, 2019.

- "Google typically launches 100+ newer ad products or changes per quarter; however, we note that some of these changes have been more privacy related and are creating a headwind in the business. . . . YouTube: Growth likely impacted by recommendation engine changes. YouTube's top priority is Responsibility, and as management takes a more strict view on what could violate its guidelines as it relates to video recommendations, this likely impacted 1Q19 results, in our opinion." Ronald V. Josey & David Yueh, *Alphabet Inc. (GOOGL)*, JMP Securities, Apr. 30, 2019.

- "'I think what we see here is investors sort of concern that in the future it seems like there's going to be more privacy constraints put on tech companies to limit their ability to track users and sell these really lucrative targeted ads. And there's going to be more pressure on the companies to really step up moderation of content on places like YouTube. All of that's going to increase costs. On the one side and push down revenues on the other side and investors are worried that this is the start of it.'" *Alphabet misses earnings estimates, stock plummets*, Reuters, Apr. 30, 2019.

- "James Lee, a Managing Director at Mizuho Securities, speculated that the product changes slowing growth likely came from YouTube – as the company has been working modifying its algorithms to remove harmful content. YouTube has been under fire as of late for its part in spreading misinformation and potentially dangerous content, especially after a *Bloomberg* report earlier this month cited former employees who said moderation at the company was sacrificed for higher product engagement." Nick Bastone, *Google's Q1 was a $70 billion disaster that analysts say is the reality-check it needs to finally make a big change*, Business Insider, Apr. 30, 2019.

- "1) Google Properties' paid clicks growth accelerated to 59% a year ago in 1Q18, we believe on YouTube product changes during that time, which created a tough comp for 1Q19 paid clicks, which increased 39%; 2) Google continues to make many (unspecified) product changes in 2019 across search & YouTube – around 100 per qtr – and their timing & impact can be lumpy; 3) YouTube has increased its focus on responsibility & safety, & it adjusted its algorithm in 1Q to reduce recommendations of content that comes close to violating guidelines or is misinformed or harmful. We believe the algo changes build on YT's efforts in 4Q18 when it removed 2.4M channels & 8.8M videos for violating YT Community Guidelines. All in, we don't think there's a single clear answer for Google's decel, but a number of factors are at work." Doug Anmuth, *et al.*, *Alphabet Inc., Revenue Slows to Sub-20% Growth, With Some Spending Moderation; Maintaining Overweight w/$1,310 PT*, J.P.Morgan, Apr. 30, 2019.

- "Privacy as a topic was well-covered last week at Google's developer conference I/O – one of the takeaways was to make it explicitly easier for users to update their privacy settings. While the downstream impact to Google's ad franchise and what its product-driven response as an offset was unclear at the time, it did highlight that it will look to serve contextual versus more personalized ads in those cases where the user has elected to opt out. Google has not explicitly disclosed any data around anticipated percentage points of impact from this move, but empirically this should result in a drag on ad price and in our view does partially explain management's commentary around revenue growth, as this will hinder the company's ability to serve more targeted ads." Stephen Ju, *et al.*, *Alphabet (GOOGL)*, Credit Suisse, May 14, 2019.

- "The changes with Drive and Chrome extensions came as part of what the company called 'Project Strobe,' which was born last year to review third-party developers access to Google and Android data. That effort prompted the shut down of Google's social network Google Plus – the company's hopeful competitor to Facebook – after it discovered a security vulnerability that exposed the private data of

up to 500,000 users. . . . These policies will make Google look like it is trying hard to care for users' data, yet provide few specifics – for instance, a term like 'the least amount of data' is open to interpretation." Jennifer Elias, *Under pressure, Google cracks down on platform privacy and safety*, CNBC (June 2, 2019), https://www.cnbc.com/2019/06/01/alphabets-google-cracks-down-on-privacy-and-safety.html.

DATED: February 28, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
MICHAEL ALBERT
J. MARCO JANOSKI GRAY
TING H. LIU
SARAH A. FALLON

          s/ Jason A. Forge
JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiff

SUPPLEMENT TO THE CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS - 4:18-cv-06245-JSW - 4 -
4874-1370-6323.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 28, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

  s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  jforge@rgrdlaw.com

4874-1370-6323.v1

# Mailing Information for a Case 4:18-cv-06245-JSW In re ALPHABET, INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Carly Lee Bittman**
  Carly@smllp.law

- **Austin P. Brane**
  abrane@wcllp.com,pbradshaw@wcllp.com

- **Benjamin Matthew Crosson**
  bcrosson@wsgr.com,rlustan@wsgr.com

- **Britt H. Evangelist**
  bevangelist@swansonmcnamara.com,AmyMcGuigan@ecf.courtdrive.com,britt@smllp.law,britt@ecf.courtdrive.com

- **Sarah Fallon**
  sfallon@rgrdlaw.com

- **Boris Feldman**
  boris.feldman@freshfields.com,usmanagingattorneyteam@freshfields.com,jonathan.sampson@freshfields.com,6188914420@filings.docketbird.com,sheana.chandar@

- **Jason A. Forge**
  jforge@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Cheryl Weisbard Foung**
  cfoung@wsgr.com,lcardenas@wsgr.com

- **Doru Gavril**
  doru.gavril@freshfields.com,richard.rodriguez@freshfields.com,suzanne.alenick@freshfields.com,6188914420@filings.docketbird.com,anthony.denatale@freshfields

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,msonney@rgrdlaw.com,tdevries@rgrdlaw.com

- **Phillip C Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Drew Liming**
  drew.liming@freshfields.com,richard.rodriguez@freshfields.com,suzanne.alenick@freshfields.com,anthony.denatale@freshfields.com,abigail.west@freshfields.com,s

- **Ting Hsiang Liu**
  TLiu@rgrdlaw.com

- **Elise M Lopez**
  elise.lopez@freshfields.com,lisa.flegenheimer@freshfields.com,anthony.denatale@freshfields.com

- **Mary Geraldine McNamara**
  mary@smllp.law,AmyMcGugian@ecf.courtdrive.com,mary@ecf.courtdrive.com,britt@ecf.courtdrive.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com

- **Shane Palmesano Sanders**
  ssanders@robbinsllp.com,notice@robbinsllp.com

- **Stephen Bruce Strain**
  sstrain@wsgr.com,pmarquez@wsgr.com

- **Edward W. Swanson**
  ed@smllp.law,AmyMcGugian@ecf.courtdrive.com,ed@ecf.courtdrive.com,britt@ecf.courtdrive.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`