**VIA ECF**

July 13, 2023

Magistrate Judge Donna M. Ryu
United States District Court for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Re:  *In re Alphabet Inc. Sec. Litig.*,
   No. 4:18-cv-06245-JSW-DMR

Dear Judge Ryu:

The parties have met and conferred by telephone (on July 6, 2023) regarding Plaintiff's request to depose defense counsel, Mary McNamara, but have been unable to resolve their disagreements. As such, the parties are submitting the following discovery letter and arguments for your consideration.

 The relevant case management deadlines are as follows: (1) the fact and expert discovery cut-off dates are June 3, 2024 and October 1, 2024, respectively; (2) the deadline and hearing dates for dispositive motions are December 20, 2024 and April 25, 2025; (3) the motion, opposition, and reply deadlines for class certification are May 2, 2023, June 30, 2023, and August 14, 2023, with a hearing on September 8, 2023; (4) the Pretrial Conference and Trial are scheduled on July 28, 2025 and August 18, 2025.  *See* Dkt. 159.

**Defendant's position**: Hours after a hearing in which the Court allowed Plaintiff to depose Alphabet's CFO on the issue of "product changes" and "other drivers of the first quarter 2019 revenue deceleration," Plaintiff demanded a deposition on that topic not of the CFO but of lead trial counsel, Mary McNamara. Defendants provided case law establishing the request was entirely improper; in contrast, and continuing a trend of maximalist demands in the absence of case law, Plaintiff insisted on a deposition date under threat of subpoena. Defendants agreed to a date — August 18th — without waiving objections. Under well-settled case law, there is no legitimate, non-harassing reason for Plaintiff to take opposing counsel's deposition in this case. Plaintiff's effort to do an end-run around the normal discovery process should be rejected.

**Background**: In September 2022, Plaintiff moved to supplement its complaint (ECF 133) to allege that damages materialized later than the October 2018 date alleged in the original complaint. Plaintiff's proposed supplement alleged that damages materialized in 1Q2019. It pointed to an earnings-call reference by Alphabet's CFO to "product changes" and alleged that those changes were privacy-related, had an "adverse effect on [Google's] business" (revenue deceleration), and caused a consequent stock drop in April 2019. ECF 154, ¶ 82(b)-(d). Defendants opposed the motion to supplement (ECF 138), arguing and attaching evidence showing that the "product changes" Plaintiff cited were unrelated to the privacy-related measures pled in the complaint. In addition to that evidence — which consisted of declarations from fact witnesses and documents (ECF 139-3, 139-4) — Defendants filed a declaration of counsel stating that she had "located the witnesses and documents addressing the precise product changes that caused the revenue deceleration and April 2019 stock drop" and had given them to Plaintiff before it filed its motion. ECF 138-2.

**Argument**: *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) supplies the standard governing attempts to depose counsel. Per *Shelton*, the practice "has long been discouraged" because it carries negative consequences for the justice system. *Id.* Depositions are permissible only where the party seeking the depositions carries its burden to show "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Id.* Courts in this district "recognize *Shelton* as the leading case" on this issue. *E.g., Monolithic Power Systems, Inc. v. Dong*, 2023 WL 350400, at *7 (N.D. Cal. Jan. 20, 2023) (collecting cases); *accord Zhu v. Li*, 2021 WL 3910720, at *2 (N.D. Cal. Sept. 1, 2021); *ATS Products, Inc v. Champion Fiberglass, Inc.*, 2015 WL 3561611, at *5 (N.D. Cal. June 8, 2015).

Plaintiff's claim that a deposition of defense counsel is necessary is not only meritless, it is frivolous. Counsel's declaration says no more than what counsel always says when marshaling responses to discovery requests, namely that she is providing responsive witnesses and documents. By making that unremarkable statement, counsel does not become a witness subject to deposition at Plaintiff's whim. *Carehouse Convalescent Hosp. v. Superior Ct.*, 143 Cal.App.4th 1558, 1564 (2006) (no deposition where "facts indicate that one litigant is attempting to take advantage of the other or that there is an abusive attempt to 'ride free' on the opponent's industry"). Even if counsel had made a substantive and percipient statement relating to the issue of damages, other — and better — means exist to obtain the information. Moreover, what counsel did to marshal witnesses and documents is privileged and protected work-product.

And counsel's deposition on any of these topics is certainly not "crucial" to Plaintiff's case. Plaintiff thus fails every prong of the *Shelton* test.

Counsel's statement that she had located witnesses and documents on the product changes leading to the revenue deceleration and resulting stock drop was followed in the same declaration by her description of providing declarations and documents on that same topic to Plaintiff, which were filed concurrently with counsel's declaration. ECF 138-2; *see also* ECF 139-3, 139-4 (witness declarations). Defendants have also provided a list of custodians, agreed to produce a 30(b)(6) witness, produced relevant documents, and of course, agreed to produce the CFO — all on this topic. Plaintiff has not deposed any of these witnesses. Failure to employ other available means of discovery dooms a request to depose opposing counsel. *S.E.C. v. Jasper*, C07-06122 JW (HRL), 2009 WL 1457755, at *2 (N.D. Cal. May 26, 2009). Similarly, counsel cannot be deposed as a witness to matters she learned from her client. *Zhu*, 2021 WL 3910720, at *2 (no deposition absent showing that attorney's knowledge non-derivative of client communication).

To the extent Plaintiff seeks a deposition on what caused the April 2019 stock drop, counsel is not an appropriate witness. Counsel stated only that she had gathered evidence on the new allegation in Plaintiff's supplement — that privacy-related "product changes" had decelerated Google's revenue growth leading to a stock drop. That statement does not make counsel an expert on market reaction to the earnings report. *Carehouse*, 143 Cal.App.4th at 1565 (attorney who compiled RFA response from client information not an expert on the subject matter subject to deposition, because she "has not been designated as an expert to testify at trial, her deposition is irrelevant, and her opinions are not evidence"). In any event, Plaintiff has not shown (nor could it) that "no other means exist to obtain the information" it seeks on the stock drop.

If Plaintiff instead seeks information about which Google witnesses and documents counsel identified as addressing this issue, whom she spoke to, what she discussed with them, what documents she reviewed, or any other mental process that contributed to her consideration of the topic, that information is plainly out-of-bounds under *Shelton* as attorney-client privileged and attorney work product. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *Mitchell Engineering v. City and Cnty. of San Francisco*, 2010 WL 1853493, at *2 (N.D. Cal. May 6, 2010) (identities of witnesses privileged); *Shelton*, 805 F.2d at 1328 (attorney's memory of documents reviewed privileged). Plaintiff cannot shortcut its discovery by deposing counsel to obtain her work product. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 538 (N.D. Cal. 1987) (privilege guards against "the temptation individual lawyers might feel to be lazy").

The averment in the declaration that counsel had personal knowledge of matters stated therein and "if called upon to testify thereto, [she] could and would competently do so" (ECF 138-2, at 1) does not change this analysis. Declarations must establish competency to testify to the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4). While counsel would testify to the same statement itself if called upon to do so (by the Court), her affirmation does not give Plaintiff the right to depose her on privileged matters. The declaration did not reveal the content of any communication or document and thus no waiver occurred. *Weil v. Investment/Indicators,*

3

*Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Sleep Sci. Partners Inc. v. Lieberman*, 2010 WL 4316687, at *1 (N.D. Cal. Oct. 26, 2010).

Plaintiff claims support from a single, distinguishable case, *Gramercy Grp., Inc. v. D.A. Builders*, LLC, 2017 WL 5230925 (D. Haw. Nov. 9, 2017). Unlike here, the *Gramercy* declaration asserted substantive facts known only to counsel, rendering the testimony unavailable through other means. *Id*. at *3-4 (rejecting argument that declaration recited minimal facts, explaining information was unavailable through other witness and that other witness had acquired knowledge of the subject matter from counsel). The specific line of questioning sought was also nonprivileged information. *Id*. at 4. Finally, the *Gramercy* declaration supported a motion for summary judgment, on which the party seeking the deposition had to prevail to continue the litigation, rendering the deposition crucial to the case. *Id*. Here Plaintiff months ago prevailed on its motion to supplement the complaint.

The only (non-harassing) reason to depose counsel here would be to "dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to [her] legal theories and strategy." *Shelton*, 805 F.2d at 1327. That does not make deposing counsel "crucial to the preparation of" Plaintiff's case; it makes it a shortcut the law prohibits. Defendants therefore request entry of a protective order preventing Plaintiff from taking the deposition of defense counsel.

**Rhode Island's Position**:  Throughout nearly five years of litigation, only one witness claims to have personally "located Google witnesses and documents addressing *the precise product changes that caused the [(a)] revenue deceleration and [(b)] April 2019 stock drop*." ECF 138-2, ¶3 (emphasis is added and internal citations are omitted throughout unless otherwise noted).  This witness is attorney Mary McNamara ("McNamara").  McNamara explicitly made this assertion to convince Judge White to deny Plaintiff's motion to supplement the complaint in this case. *Id.*, ¶1.  To buttress her reliability, McNamara assured Judge White that, "I have personal knowledge of the facts stated herein and declare under penalty of perjury that they are true and correct . . . [and] *[i]f called upon to testify thereto, I could and would competently do so*." *Id.* This tactical deployment of Defendants' lawyer is a problem Plaintiff flagged immediately nearly a year ago. *See* ECF 142 at 18 ("This discovery will necessarily extend to defendants' *trial counsel*, who defendants chose to insert as a fact witness . . . .") (emphasis in original).  Defendants had weeks to withdraw McNamara's representations or tell the Court to disregard them, so she wouldn't be subject to discovery.  Instead, they rolled the dice, hoping the Court would be swayed by the personal assurance of a prominent local lawyer.  Likewise, Defendants could have cooperated more recently by identifying the witnesses who are willing to address, under oath "the precise product changes that caused the revenue deceleration *and* April 2019 stock drop" (and producing all related documents).  Defendants refused.  What Defendants characterize as a "demand" and "insist[ence]" was a courteous execution of Judge White's Standing Order for Depositions ("Please provide whatever dates would be most convenient for you in July and August.") and offer to compromise – met with Defendants' refusal to cooperate.

In granting Plaintiff's motion to supplement (which connected the April 30 and May 1, 2019 share-price drops to Defendants' alleged securities fraud), Judge White refused to accept Defendants' one-sided untested version of facts and expressly held that "Plaintiff has the prerogative to test the evidence" that Defendants had submitted. ECF 153 at 5.  This "evidence" undeniably includes McNamara's declaration, along with four other declarations (ECF 138-3, 139-1, 139-5, 139-6).  Regarding these other declarations, no declarant claimed to have located "the precise product changes that caused the [(a)] revenue deceleration and [(b)] April 2019 stock drop" (ECF 138-2, ¶3), as did McNamara.  The only product changes discussed in these declarations were said to be non-privacy related, and no other declarant attested to any product changes as having "caused the . . . April 2019 stock drop," as did McNamara.  *See* ECF 139-5 at 4; ECF 139-6 at 2.  Moreover, Google has recently admitted that privacy-related changes were, in fact, reducing revenues in the first quarter of 2019 (ECF 179-3 at 26), but even this declarant does not attest to any product changes as having caused the April 2019 stock drop, as did McNamara.

The complaint (as supplemented) expressly alleges multiple causes of the April 30 and May 1, 2019 share-price drops. ECF 154 at 2-3.  McNamara's unique claim to have personally "located Google witnesses and documents addressing the precise product changes that caused the [(a)] revenue deceleration and [(b)] April 2019 stock drop" (ECF 138-2, ¶3) makes her a unique witness to an essential issue in this case.  She is also a witness who asserted, under penalty of perjury, that she would testify as to her representation. *Id.*, ¶1.  Yet, when called upon to do so, after Judge White explicitly held that "Plaintiff has the prerogative to test the evidence" (which included McNamara's unique declaration) (ECF 153 at 5), McNamara refused to do so.

Again, Defendants refused Plaintiff's offered interim (at least) compromise, asserting that any information beyond what they had filed was protected work product.  Putting aside the obvious

sword-and-shield problems with Defendants' position,[1] they offered no other compromise and left Plaintiff no choice but to persist with its pursuit of McNamara's deposition. Defendants cited four cases in purported support of their position, yet not one parallels the following circumstances uniquely presented here (nor do the cases they cite above):

1. Party supports its argument, in part, with assertions of fact set forth in its attorney declaration that is expressly based on attorney's purported personal knowledge;

2. Party provides no other witness or document making the same assertions of fact that attorney-witness made (and later refuses to identify the witnesses and documents to which attorney-witness referred in her fact declaration);

3. Attorney-witness submits her factual assertions along with a promise, subscribed under penalty of perjury, that she would testify as to the asserted facts if called upon to do so;

4. The presiding District Court Judge held that the opposing party "has the prerogative to test the evidence" that party had submitted in support of its argument (which included attorney-witness's declaration asserting facts); and

5. The asserted facts concern a critical issue in the case.

Plaintiff has also been unable to locate any case precluding the deposition of any attorney-witness under such circumstances.

The most analogous case Plaintiff could find is *Gramercy Grp., Inc. v. D.A. Builders, LLC*, 2017 WL 5230925, at *3-*4 (D. Haw. Nov. 9, 2017), where the court applied the *Shelton* factors[2] to a situation, like here, in which the party seeking the protective order (the plaintiff in that case) had submitted a declaration from its attorney in support of its motion for summary judgment. When the plaintiff later tried to downplay the significance of the attorney's factual assertions

---

[1] *See, e.g.*, *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) ("Here, [the defendant] has attempted to use the disclosed document as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation. The Court finds that by voluntarily producing a privileged document concerning [a specific topic], [the defendant] waived the attorney-client privilege and work product protection as to all . . . communications [involving the same individual concerning the same topic].").

[2] "'(1) No other means exist to obtain the information than to depose opposing counsel; (2) The information sought is relevant and nonprivileged; and (3) The information is crucial to the preparation of the case.'" *Gramercy*, 2017 WL 5230925, at *2. For the record, Plaintiff does **not** concede the validity or applicability of the *Shelton* factors where, as here, a party affirmatively uses its attorney as a fact witness in support of a motion, the attorney (and only the attorney) attests to facts purportedly addressing the key issues in the case, and the attorney declares under penalty of perjury that she "could and would competently" testify about the same facts. The facts of *Shelton* are not remotely similar to those presented here. *Cf In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70-72 (2d Cir. 2003) (rejecting notion that *Shelton* is some sort of talisman that overrides the Rule 26 stands and relieves movants of their burden of proving "an inappropriate burden or hardship").

supporting the motion, the court saw right through such "gamesmanship": "Plaintiff deemed it necessary to present [the attorney's] declarations with its MSJs. Depriving Defendants of the opportunity to meaningfully respond would be patently unfair and would promote gamesmanship. Plaintiff is requesting the adjudication of claims as a matter of law, yet it effectively seeks to prevent Defendants from opposing its assertions." *Id.* at *4. The court likewise rejected the plaintiff's argument that deposing its President about similar declarations would suffice: "That [he] provided declarations with similar statements should not deprive Defendants of the opportunity to depose [the attorney] to elicit her personal knowledge about her attestations, which may differ from [the President's] personal knowledge. [His] testimony is not an adequate substitute, as he is unable to testify about [the attorney's] knowledge. Hence, the Court finds that deposing [the attorney] is the only means of obtaining the requested information." *Id*. at *3.

The circumstances here are even more compelling than in *Gramercy* because, here, Defendants have refused to identify other witnesses willing to "address[] **the precise product changes that caused the [(a)] revenue deceleration and [(b)] April 2019 stock drop**." ECF 138-2, ¶3. A smattering of witnesses talking about a smattering of product changes and vague allusions to lists of custodians is a far cry from McNamara's specificity. Therefore, the Court should reject any assertions by Defendants that Plaintiff should start a fishing expedition, when Defendants have refused to cooperate by identifying any such witnesses and immediately producing all related documents, so Plaintiff can take a reliable deposition. Even if there were such a witness, Plaintiff may still be entitled to "the opportunity to depose [McNamara] to elicit her personal knowledge about her attestations, which may differ from [belatedly identified witness's] personal knowledge." *Gramercy*, 2017 WL 5230925, at *3. But the first step requires Defendants' cooperation.

DATED: 7/13/2023                                Respectfully submitted,

SWANSON & McNAMARA LLP

*/s/ Edward W. Swanson*
Edward W. Swanson

EDWARD SWANSON
MARY McNAMARA
BRITT EVANGELIST
CARLY BITTMAN
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010
mary@smllp.law
ed@smllp.law
britt@smllp.law
carly@smllp.law

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
IGNACIO E. SALCEDA
BENJAMIN M. CROSSON
STEPHEN B. STRAIN
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
isalceda@wsgr.com
bcrosson@wsgr.com
sstrain@wsgr.com

Attorneys for Defendants Alphabet Inc., Google LLC, Lawrence E. Page, Sundar Pichai, Keith P. Enright and John Kent Walker, Jr.

ROBBINS GELLER RUDMAN & DOWD LLP

*/s/ Jason A. Forge*
Jason A. Forge

JASON A. FORGE
MICHAEL ALBERT
J. MARCO JANOSKI GRAY
LAURA ANDRACCHIO
TING H. LIU
SARAH A. FALLON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
jforge@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com

Lead Counsel for Plaintiff