ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
ELLEN GUSIKOFF STEWART (144892)
LAURA ANDRACCHIO (187773)
MICHAEL ALBERT (301120)
J. MARCO JANOSKI GRAY (306547)
TING H. LIU (307747)
KENNETH P. DOLITSKY (345400)
SARAH A. FALLON (345821)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
elleng@rgrdlaw.com
landracchio@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
kdolitsky@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION | ) Master File No. 3:18-cv-06245-TLT <br> ) <br> ) <u>CLASS ACTION</u> <br> ) |
| This Document Relates To: <br><br> ALL ACTIONS. | ) LEAD PLAINTIFF'S NOTICE OF MOTION, <br> ) MOTION FOR FINAL APPROVAL OF <br> ) SETTLEMENT AND APPROVAL OF PLAN <br> ) OF ALLOCATION, AND MEMORANDUM <br> ) OF POINTS AND AUTHORITIES IN <br> ) SUPPORT THEREOF <br> ) <br> ) DATE:  September 24, 2024 <br> ) TIME:  2:00 p.m. <br> ) CTRM:  9, 19th Floor <br> ) JUDGE:  Honorable Trina L. Thompson |

4890-9161-3646.v1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................2

II.  OVERVIEW OF THE LITIGATION ................................................................................2

III. THE PRELIMINARILY APPROVED SETTLEMENT WARRANTS FINAL APPROVAL .........................................................................................................................3

    A. The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2) ..................5

        1. Rule 23(e)(2)(A): Rhode Island and Lead Counsel Have Adequately Represented the Settlement Class .............................................5

        2. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator ..................5

        3. Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Further Litigation ....................6

        4. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective .........................................................................................7

        5. Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Settlement Class Members Equitably .............................................................8

    B. The Remaining Ninth Circuit Factors Are Satisfied ................................................9

        1. Discovery Completed and Stage of the Proceedings .................................9

        2. The Risk of Maintaining Class Action Status..............................................9

        3. Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate ...............................................................................................10

        4. The Reaction of Settlement Class Members to the Settlement Supports Approval ......................................................................................11

        5. The Settlement Amount Is an Excellent Result for the Settlement Class.............................................................................................................11

IV. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................12

V.  NOTICE TO THE SETTLEMENT CLASS SATISFIES DUE PROCESS......................12

VI. CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ................................................................................................. 3

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................................... 3

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................................. 4, 6

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 12

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
  533 F. Supp. 3d 881 (N.D. Cal. 2020) ..................................................................................... 5

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................. 7

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ....................................................................... 10

*Foster v. Adams & Assocs., Inc.*,
  2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .................................................................... 9, 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................. 5

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................................................................... 13

*Hessefort v. Super Micro Comput., Inc.*,
  2023 WL 7185778 (N.D. Cal. May 5, 2023) ...................................................................... 8, 9

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................................. 8, 12

*In re Aqua Metals, Inc. Sec. Litig.*,
  2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ........................................................................... 13

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) .......................................................................... 4

**Page**

*In re Google Location Hist.*,
     2024 WL 1975462 (N.D. Cal. May 3, 2024)...........................................................................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
     926 F.3d 539 (9th Cir. 2019) ...............................................................................................3, 5

*In re LinkedIn User Priv. Litig.*,
     309 F.R.D. 573 (N.D. Cal. 2015)............................................................................................11

*In re Omnivision Techs., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................................8, 10

*In re Resistors Antitrust Litig.*,
     2020 WL 2791922 (N.D. Cal. Mar. 24, 2020)..........................................................................8

*In re Tesla, Inc. Sec. Litig.*,
     No. 3:18-cv-04865-EMC (N.D. Cal.) ......................................................................................7

*In re Veritas Software Corp. Sec. Litig.*,
     496 F.3d 962 (9th Circ. 2007)................................................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
     2017 WL 2212783 (N.D. Cal. May 17, 2017).........................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
     229 F. Supp. 3d 1052 (N.D. Cal. Jan. 23, 2017)......................................................................3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
     895 F.3d 597 (9th Cir. 2018) ...................................................................................................3

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
     2020 WL 4212811 (N.D. Cal. July 22, 2020),
     *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ..................................................................7

*In re Zynga Inc. Sec. Litig.*,
     2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................................................................7

*Kastler v. Oh My Green, Inc.*,
     2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) .........................................................................3

*Low v. Trump Univ., LLC*,
     881 F.3d 1111 (9th Cir. 2018) ...............................................................................................13

*Mauss v. NuVasive, Inc.*,
     2018 WL 6421623 (S.D. Cal. Dec. 6, 2018).....................................................................5, 12

**Page**

*Mendoza v. Hyundai Motor Co.*,
 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ................................................................................4

*Morrison v. Ross Stores, Inc.*,
 2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) ........................................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950) .................................................................................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................13

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
 688 F.2d 615 (9th Cir. 1982) .................................................................................................3, 6

*Redwen v. Sino Clean Energy, Inc.*,
 2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) .........................................................................7

*Rodriguez v. Nike Retail Servs., Inc.*,
 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) .............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ......................................................................................5, 10, 13

*Thompson v. NSC Techs., LLC*,
 2023 WL 2756980 (S.D. Cal. Mar. 30, 2023) ...........................................................................4

*Vataj v. Johnson*,
 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .........................................................................12

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................................3, 13
    Rule 23(c)(1) ............................................................................................................................10
    Rule 23(c)(2)(B) .......................................................................................................................13
    Rule 23(e) ..............................................................................................................................3, 4
    Rule 23(e)(1)(B) .......................................................................................................................12
    Rule 23(e)(2) ..........................................................................................................................4, 5
    Rule 23(e)(2)(A) ........................................................................................................................5
    Rule 23(e)(2)(B) ........................................................................................................................5
    Rule 23(e)(2)(C) ........................................................................................................................6
    Rule 23(e)(2)(C)(i) .....................................................................................................................6
    Rule 23(e)(2)(C)(ii) ....................................................................................................................7
    Rule 23(e)(2)(D) ........................................................................................................................8

**Page**

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements: 2023 Review and Analysis*
 Laarni T. Bulan & Laura E. Simmons (Cornerstone Research 2024) ..............................11, 12

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 24, 2024, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Phillip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, lead plaintiff State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island" or "Lead Plaintiff") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

Lead Plaintiff's motion is supported by the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Eileen Ki Cheng ("Cheng Decl."), the Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion and Objections Received to Date ("Murray Decl."), the Stipulation of Settlement, dated February 5, 2024 (ECF 222-2) ("Stipulation"), all other pleadings and matters of record, and such additional evidence and testimony as may be presented before or at the hearing.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on September 6, 2024, after the August 23, 2024 deadline for Settlement Class Members to object to the Settlement or Plan of Allocation has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final approval of the Settlement.
2. Whether the Court should approve the Plan of Allocation.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court assiduously reviewed the Motion for Preliminary Approval of Proposed Settlement (ECF 222), engaged the parties with multiple inquiries, and only after completing its comprehensive consideration of all the relevant factors, facts, and responses did the Court preliminarily approve the $350,000,000 Settlement.[1]  Because the standards for final approval are the same as for preliminary approval, the only real question is whether any of the relevant circumstances have changed in any way that undermines the Court's Preliminary Approval Order (ECF 232).  They have not.  If anything, the case for approving settlement has gotten meaningfully stronger due to the overwhelmingly positive response from Settlement Class Members.  While the period for submitting claims and objections remains open, thus far the response has been overwhelmingly positive with over 29,800 claims received representing tens of millions of shares versus only 31 opt-outs representing 55 shares and zero objections.  If called upon to do so, Rhode Island will promptly provide any additional information the Court may want and answer any questions the Court may have.  Otherwise, the record in this case weighs overwhelmingly in favor of the Court making final its preliminary approval of the Settlement and award of attorneys' fees and expenses.  Accordingly, rather than burden the Court with voluminous repetitive submissions, Rhode Island incorporates by this reference its prior submissions and the Court's Preliminary Approval Order, while highlighting below the satisfaction of the relevant factors and the appropriateness of both the Settlement and requested fee and expense award.

## II. OVERVIEW OF THE LITIGATION

Rhode Island's motion for preliminary approval of settlement set forth an overview of the litigation, which is incorporated here, as nothing has changed since the Court preliminarily approved the Settlement.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation of Settlement, dated February 5, 2024 ("Stipulation") (ECF 222-2).  Unless otherwise noted, all emphasis is added and citations are omitted.

## III. THE PRELIMINARILY APPROVED SETTLEMENT WARRANTS FINAL APPROVAL

As an initial matter, certification of the Settlement Class remains appropriate as nothing has changed since preliminary approval that would undermine the Court's certification of the Settlement Class. "Because the Settlement Class has not changed, the Court sees no reason to revisit the analysis of Rule 23." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1062-63 (N.D. Cal. Jan. 23, 2017).[2]

With respect to final approval of the Settlement, the Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)). The decision of whether a settlement is fair is ultimately left for the sound discretion of the trial judge. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("Deciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' best left [for] the district judge."). Courts should not, however, convert settlement approval into an inquiry into the merits as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (cautioning against "resolv[ing] unsettled legal questions" on settlement approval).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after a

---

[2] Emphasis is added and citations are omitted unless otherwise indicated.

hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the Court must:

> consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: . . . the costs, risks, and delay of trial and appeal [among other things]; and (D) the proposal treats class members equitably relative to each other.

*Id.*

In addition to the Rule 23(e) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement comports with Rule 23(e)(2):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *4 (N.D. Cal. Jan. 23, 2017) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. *See* ECF 232. The Court's conclusion on preliminary approval is equally true now as nothing has changed between April 9, 2024, and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."); *Thompson v. NSC Techs., LLC*, 2023 WL 2756980, at *5 (S.D. Cal. Mar. 30, 2023) ("Because there have been no material changes in any of the relevant circumstances since the Preliminary Approval Order, the same determinations are warranted at this time with respect to the fairness analysis.").

Rhode Island respectfully submits that the proposed Settlement satisfies Rule 23(e)(2), the relevant Ninth Circuit factors, and the guidelines set forth in the Northern District of California's Procedural Guidance for Class Action Settlements (the "Guidelines"), and warrants final approval as fair, reasonable, and adequate.

**A.     The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

      **1.     Rule 23(e)(2)(A): Rhode Island and Lead Counsel Have Adequately Represented the Settlement Class**

Rhode Island and Lead Counsel have more than adequately represented the Settlement Class as required by Rule 23(e)(2)(A). *See generally* Cheng Decl. The exceptional Settlement negotiated on the Settlement Class's behalf is the result of the diligent prosecution of this Action for over five years.[3] Lead Plaintiff has no interests antagonistic to those of other Settlement Class Members; rather, it shares the common interest in obtaining the largest possible recovery from Defendants. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 566 ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflict[] of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see* ECF 232 (finding Rhode Island and Lead Counsel to have adequately represented the Settlement Class).

      **2.     Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator**

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *accord Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020). The Settlement follows extensive litigation over the course of over five years, which involved an appeal to the Ninth Circuit, a reversal of Judge White's dismissal of the Complaint, a supplement to account for post-filing events, two motions for class certification, and numerous significant disputes with Defendants concerning the scope of discovery. *Supra*, §§I-II; *see also Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("The agreement comes in the wake of over four years of extensive investigation, discovery, and

---

[3]   As part of the settlement, the total amount was funded immediately. As of the date of this memorandum, the fund has earned over $9.4 million in interest.

motion practice, after which the parties engaged in arms'-length negotiations before a mediator."). The Settlement was achieved only after the parties engaged in a protracted mediation process before former U.S. District Judge Layn R. Phillips of Phillips ADR, which included both in-person mediation and conferences over the course of more than a year, resulting in a $350 million mediator's proposal. These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

> **3.     Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Further Litigation**

Pursuant to Rule 23(e)(2)(C), the Court also must consider the substantive adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i) considers "the costs, risks and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575. The benefits conferred on Settlement Class Members by the Settlement outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

To prevail on its claims, Rhode Island would have to succeed in proving ***all*** of the following aspects of this case:

i.  Defendants employed a scheme in violation of Rule 10b-5(a) and (c), and/or that Defendants omitted to state a material fact necessary in order to make the statements made not misleading, in violation of Rule 10b-5(b);

ii. Defendants had actual knowledge or recklessly disregarded any omitted material facts;

iii. Defendants' material omissions and/or scheme – rather than some non-fraud-related issue - caused Rhode Island and class members' losses; ***and***

iv. That class members sustained damages and, if so, the proper measure of any such damages.

*See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). **In addition**, Rhode Island would have to defeat all of Defendants' sixteen affirmative defenses. Again, Rhode Island would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation. Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'"").

The $350 million Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Risks of proving liability and recoverable damages present significant obstacles to Lead Plaintiff's success at class certification, summary judgment, or trial. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) ("[F]urther litigation would have delayed any potential recovery . . . and would have been costly and risky. By contrast, the Settlement provides . . . timely and certain recovery."), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022); *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal.) (securities class action defendants obtaining jury verdict notwithstanding district judge granting plaintiffs' motion for summary judgment on falsity element). As discussed above, some of these risks are particularly poignant here, in a case where other plaintiff's firms believed there to be (and Defendants argued that there were) no damages – a view supported by standard application of conventional damages thinking and methodologies. *See, e.g.*, *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("[I]t [is] difficult for [plaintiff] to prove loss causation and damages at trial.") (second and third alteration in original). In spite of this, Rhode Island secured one of the largest settlements in the history of this District.

### 4. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Rhode Island and Lead Counsel have also taken substantial efforts to notify the Settlement Class about the proposed Settlement under Rule 23(e)(2)(C)(ii). Pursuant to the Preliminary Approval Order, more than 1.2 million copies of the Summary Notice were mailed or emailed to

potential Settlement Class Members and nominees; the Summary Notice was also published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for the Settlement (www.AlphabetSecuritiesSettlement.com) contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.  The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.

### 5. Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Settlement Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other."  Assessment of the Settlement's Plan of Allocation "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  Drafted with the assistance of Lead Plaintiff's consulting damages expert, the Plan is fair, reasonable, and adequate because it does not treat Rhode Island or any other Settlement Class Member preferentially.  *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *8 (C.D. Cal. Oct. 25, 2016) (finding "the plan of allocation is rationally grounded in a formula that will compensate class members for the losses related to their Amgen securities").  The Plan, set forth in the Notice (Murray Decl., Ex. B, Notice at 9-14), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.18) to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  Lead Plaintiff, just like all other Settlement Class Members, will be subject to the same formula for distribution of the Settlement. *See In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2 (N.D. Cal. Mar. 24, 2020) (approving plan of allocation using *pro rata* basis of distribution which "does not unfairly favor any Class Member, or group of Class Members, to the detriment of others").  *Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *7 (N.D. Cal. May 5, 2023) ("This type of pro rata distribution has frequently been

determined to be fair, adequate, and reasonable."). Accordingly, the Plan is fair, reasonable, and applies in an equitable manner to all Settlement Class Members.

### B. The Remaining Ninth Circuit Factors Are Satisfied

#### 1. Discovery Completed and Stage of the Proceedings

The Settlement was reached after Lead Counsel had prosecuted the Action for over five years, engaged in extensive written discovery, litigated multiple significant discovery disputes, briefed two rounds of class certification, and participated in settlement discussions through Judge Phillips for over a year. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 2212783, at *16 (N.D. Cal. May 17, 2017) (finding service of "'extensive written discovery requests, including interrogatories, requests for production, and requests for admissions'" and class counsel's damages analysis gave the plaintiffs "sufficient information to make an informed decision about the [s]ettlement"); *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given extensive discovery, years of litigation, and multiple settlement conferences); *Hessefort*, 2023 WL 7185778, at *6 (finding "the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement" given exchange of written discovery, deposition of the plaintiff's market efficiency expert, briefing class certification and multiple motions to dismiss, and "a full-day mediation and subsequent settlement negotiations"). This factor weighs in favor of Settlement approval.

#### 2. The Risk of Maintaining Class Action Status

The issue of class certification had yet to be decided when the Settlement was reached, but Defendants had vigorously opposed Rhode Island's attempts to certify the class. ECFs 130,181. The introduction to Defendants' opposition to class certification should leave no doubt that even if Rhode Island succeeded in obtaining class certification, Defendants would exhaust all of their appellate options:

> "This is a prototypical class action case," writes Plaintiff in its Motion. That must be the understatement of the year. To the contrary, this is a case of first impression. It is the first time – at least after the Supreme Court's decision in Goldman, but possibly ever – a plaintiff attempts to bring a securities fraud class action when

(i) the purported fraud did not impact the company stock price and (ii) there are no damages.  These are insurmountable deficiencies, not routine objections.

While Rhode Island had confidence in its ability to show price impact and defend the soundness of its class-wide damages model, routine thinking and methodologies supported Defendants' arguments, which posed a significant risk for maintaining any case (as well as class action status).  *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses.")[4]

This factor strongly weighs in favor of this Court's approval of the Settlement.

### 3. Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967.  Thus, courts grant great weight to the recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022).  Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

Lead Counsel has extensive experience representing plaintiffs in securities and other complex class action litigation and possessed a firm understanding of the strengths and weaknesses of the claims by the time the Settlement was reached, particularly given the protracted nature of this Action.  Lead Counsel concluded that the Settlement is an outstanding result for the Settlement Class.  Rhode Island, which was active in the Action, authorized counsel to settle it and supports the reasonableness of the Settlement.  *See* Cheng Decl., ¶4.

---

[4] Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits, which is "an inescapable and weighty risk that weighs in favor of a settlement."  *In re Google Location Hist.*, 2024 WL 1975462, at *6 (N.D. Cal. May 3, 2024).

### 4. The Reaction of Settlement Class Members to the Settlement Supports Approval

The reaction of the Settlement Class to the Settlement supports approval. *See Foster*, 2022 WL 425559, at *6 ("[T]he Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'"); *accord In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015). Summary Notices were mailed or emailed to potential Settlement Class Members and nominees and was also published in *The Wall Street Journal* and transmitted over *Business Wire*. *See* Murray Decl., ¶¶11-12. The deadline to object to any aspect of the Settlement is August 23, 2024. To date, the response has been overwhelmingly positive with over 29,800 claims received representing tens of millions of shares versus only 31 opt-outs representing 55 shares and zero objections, which weighs in favor of approval. Rhode Island will address objections, if any, in its reply papers.

### 5. The Settlement Amount Is an Excellent Result for the Settlement Class

The $350,000,000 recovery achieved by the Settlement is an indisputably excellent result for the Settlement Class. The Settlement is the fifth largest securities class action recovery in Northern District of California history. It is also the largest ever privacy or cybersecurity-related securities class action recovery and this Circuit's largest ever securities class action recovery following a complete dismissal of the case. Importantly, this recovery far exceeds the median securities settlement as a percentage of estimated damages by any measure, but, considering that Defendants and other plaintiff's firms believed there to be no damages in this case by conventional methods, this is, mathematically, infinitely more than expected.

Even stretching conventional norms to arrive at a damages estimate would amount to $1.405 billion in total, and the $350 million recovery would amount to just under 25% of the stretch damages. This is more than 12 times the median percentage recovery for cases settled with estimated damages of $1 billion or more in 2023, and nearly 10 times the median recovery (2.6%) of similar cases settled between 2014 and 2022. *See, e.g.*, Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* at 6 (Cornerstone Research 2024).

This percentage also greatly exceeds the median settlement as a percentage of estimated damages in the Ninth Circuit from 2014 through 2023 (4.6%). *Id.* at 20.

In sum, Lead Counsel obtained an extraordinary result for the Settlement Class, and the Court should find that the Settlement is fair, reasonable, and adequate and grant final approval.

## IV. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Rhode Island seeks final approval of the Plan of Allocation that the Court preliminarily approved on April 2, 2024. ECF 228. The Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless governed by the same legal standards: the plan must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Amgen*, 2016 WL 10571773, at *7 ("To be approved, the plan needs to have a reasonable, rational basis."); *Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."). As determined by the Court in the April 2, 2024 Order, the Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Settlement Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation). Individual claimants' recoveries will depend upon when they bought Alphabet Class A and/or Class C shares during the Settlement Class Period and whether and when they sold their shares. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund. This is the traditional and reasonable approach to allocating securities settlements. *See, e.g.*, *Mauss*, 2018 WL 6421623, at *4 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). No objections to the Plan of Allocation have been filed. As a result, the Plan of Allocation is fair and reasonable and should be approved.

## V. NOTICE TO THE SETTLEMENT CLASS SATISFIES DUE PROCESS

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who

1  can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); *see also In re Aqua Metals,*
2  *Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022).  The notice must describe """the
3  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to
4  come forward and be heard.""" *Rodriguez*, 563 F.3d at 962; *see also Morrison v. Ross Stores, Inc.*,
5  2022 WL 17592437, at *4 (N.D. Cal. Feb. 16, 2022) (stating notice is adequate if "'reasonably
6  calculated, under all the circumstances, to apprise interested parties of the pendency of the action and
7  afford them an opportunity to present their objections'") (quoting *Mullane v. Cent. Hanover Bank &*
8  *Tr. Co.*, 339 U.S. 306, 314 (1950)); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018)
9  ("The yardstick against which we measure the sufficiency of notices in class action proceedings is
10  one of reasonableness.").  The PSLRA further requires that the settlement notice include a statement
11  explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re*
12  *Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Circ. 2007).
13        The substance of the Notice satisfies Rule 23 and due process.  In accordance with the
14  Court's Preliminary Approval Order, the Claims Administrator has disseminated over 1.2 million
15  copies of the Court-approved Summary Notice to potential Settlement Class Members and their
16  nominees who could be identified with reasonable effort, from multiple sources.  *See* Murray
17  Decl., ¶11.  In addition, the Summary Notice was published in *The Wall Street Journal* and
18  transmitted over *Business Wire*.  *Id.*, ¶12.  The Claims Administrator also provided all information
19  regarding the Settlement online through the Settlement website:
20  www.AlphabetSecuritiesSettlement.com.  *Id.*, ¶14.  The Notice provides the necessary information
21  for Settlement Class Members to make an informed decision regarding the proposed Settlement, as
22  required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed
23  to eligible Settlement Class Members who submit valid and timely Proofs of Claim under the Plan of
24  Allocation as described in the Notice.  The notice program here fairly apprises Settlement Class
25  Members of their rights with respect to the Settlement, is the best notice practicable under the
26  circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil
27  Procedure 23, the PSLRA, and due process.  *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*,
28  2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016); *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

*Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (finding notice sufficient when, as here, it described background of case and terms of proposed settlement and it provided class members "with clear instructions about how to object").

## VI. CONCLUSION

For each of the foregoing reasons, Rhode Island respectfully requests that the Court finally approve the Settlement and the Plan of Allocation.

DATED:  July 19, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
ELLEN GUSIKOFF STEWART
LAURA ANDRACCHIO
MICHAEL ALBERT
J. MARCO JANOSKI GRAY
TING H. LIU
KENNETH P. DOLITSKY
SARAH A. FALLON

      s/ Jason A. Forge
JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
elleng@rgrdlaw.com
landracchio@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
kdolitsky@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiff

LEAD PLAINTIFF'S NOTICE OF MOTION FOR FINAL APPROVAL OF SETTLEMENT & PLAN OF ALLOCATION, & MEMO OF POINTS & AUTHS IN SUPPORT THEREOF - 3:18-cv-06245-TLT  - 14 -
4890-9161-3646.v1