ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON A. FORGE (181542)
ELLEN GUSIKOFF STEWART (144892)
LAURA ANDRACCHIO (187773)
MICHAEL ALBERT (301120)
J. MARCO JANOSKI GRAY (306547)
TING H. LIU (307747)
KENNETH P. DOLITSKY (345400)
SARAH A. FALLON (345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jforge@rgrdlaw.com
elleng@rgrdlaw.com
landracchio@rgrdlaw.com
malbert@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
kdolitsky@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION | Master File No. 3:18-cv-06245-TLT |
| | CLASS ACTION |
| This Document Relates To: | LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:       September 24, 2024 |
| | TIME:       2:00 p.m. |
| | CTRM:      9, 19th Floor |
| | JUDGE:     Honorable Trina L. Thompson |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................2

I.      INTRODUCTION ...................................................................................................2

II.     PROCEDURAL AND FACTUAL BACKGROUND.............................................4

III.    THE REQUESTED FEE IS FAIR AND REASONABLE.....................................4

      A.      A Reasonable Percentage of the Fund Is the Appropriate Method for
Awarding Attorneys' Fees in Common Fund Cases...................................4

      B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the
Requested Fee in This Case ........................................................................6

            1.      Lead Counsel Achieved an Excellent Result for the Settlement
Class................................................................................................7

            2.      The Litigation Was Uncertain and Highly Complex ....................8

            3.      The Skill Required and Quality of Work......................................10

            4.      The Contingent Nature of the Fee and the Financial Burden
Carried by Lead Counsel ..............................................................11

            5.      Awards Made in Similar Cases Support the Fee Request.............12

            6.      A Lodestar Crosscheck Confirms that the Requested Fee Is
Reasonable .....................................................................................13

            7.      The Settlement Class's Reaction to Date Supports the Fee Request.........15

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
APPROVED ...........................................................................................................16

V.      CONCLUSION......................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Andrews v. Plains All Am. Pipeline L.P.*,
   2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ................................................6, 13

5

6

*Baird v. BlackRock Institutional Tr. Co.*,
   2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ............................................................5

7

8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................15

9

*Blum v. Stenson*,
   465 U.S. 886 (1984).................................................................................................4

10

11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).................................................................................................4

12

13

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)......................................................7, 14

14

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020) ...........................................................................13

15

16

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)........................................................12

17

18

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................................................14

19

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ..............................................................................5

20

21

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2015 WL 2438274 (N.D. Cal. May 21, 2015) .........................................................12

22

23

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................................16

24

*Hatamian v. Advanced Micro Devices, Inc.*,
   2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)...........................................................16

25

26

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom.*, *Hefler v. Pekoc*,
   802 F. App'x 285 (9th Cir. 2020) ..........................................................7, 8, 14, 16

27

28

**Page**

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................7

*In re 3Com Sec. Litig.*,
  No. 5:97-21083-EAI, ECF 180 (N.D. Cal. Mar. 9, 2001) .......................................13

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................................5

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................................................13

*In re Apollo Grp., Inc. Sec. Litig.*,
  2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
  *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010) ...........................10

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ..........................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..............................................................................4, 5

*In re Broiler Chicken Antitrust Litig.*,
  2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .............................................................7

*In re Capacitors Antitrust Litig.*,
  2017 WL 9613950 (N.D. Cal. June 27, 2017) ..........................................................5

*In re Capacitors Antitrust Litig.*,
  2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ............................................................6

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................................13

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ...........................................................6

*In re Charter Commc'ns, Inc. Sec. Litig.*,
  2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................12

*In re DaimlerChrysler Sec. Litig.*,
  2004 U.S. Dist. LEXIS 31757 (D. Del. Feb. 5, 2004) ...........................................12

Page

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021),
   *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ................................................................15

*In re Google Plus Profile Litig.*,
   Case No. 5:18-cv-06164-EJD (N.D. Cal.) ...........................................................................8

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .....................................................................12

*In re Korean Air Lines Co.*, *Antitrust Litig.*,
   2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ......................................................................5

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .....................................................................6

*In re Luckin Coffee Inc. Sec. Litig.*,
   No. 1:20-cv-01293-JPC, ECF 338 (S.D.N.Y. July 22, 2022).............................................13

*In re Mylan N.V. Sec. Litig.*,
   2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023),
   *aff'd sub nom.*, *Menorah Mivtachim Ins. Ltd. v. Sheehan*,
   2024 WL 1613907 (2d Cir. Apr. 15, 2024) ...........................................................................9

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
   768 F. App'x. 651 (9th Cir. 2019) .........................................................................................4

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................5, 6

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010)....................................................................................11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................................8

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................................12

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)....................................................................................................5

Page

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ....................................................9, 12

*In re Tesla, Inc. Sec. Litig.*,
No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023).................................9

*In re Twitter Inc. Sec. Litig.*,
2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) .......................................................6

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)................................................ *passim*

*In re Wash. Mut., Inc. Sec. Litig*,
2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ....................................................15

*Lee's Summit, MO v. Surface Transp. Bd.*,
231 F.3d 39 (D.C. Cir. 2000) ..................................................................................7

*Lopez v. Youngblood*,
2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)........................................................5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................15

*Nieman v. Duke Energy Corp.*,
2015 WL 13609363 (W.D.N.C. Nov. 2, 2015).....................................................13

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ..........................................................................17

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ................................................................................14

*Purple Mountain Tr. v. Wells Fargo Co.*,
No. 3:18-cv-03948, ECF 243 (N.D. Cal. Sept. 26, 2023).................................6, 14

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................................17

*Savani v. URS Pro. Sols. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014) ..............................................................11

**Page**

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ...........................................................................11

*Steiner v. Am. Broad. Co., Inc.*,
   248 F. App'x 780 (9th Cir. 2007) .....................................................................15

*Vataj v. Johnson*,
   2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ......................................................5

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) .............................................................................4

*Vincent v. Reser*,
   2013 WL 621865 ( N.D. Cal. Feb. 19, 2013) .............................................16, 17

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................9

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................5, 6, 15

*Wing v. Asarco Inc.*,
   114 F.3d 986 (9th Cir. 1997) ...........................................................................10

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(6) ........................................................................................................5

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2024) ...................................................................7

*Manual for Complex Litigation (Fourth)* (2004),
   §14.121.................................................................................................................6

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on September 24, 2024, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Phillip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") will and hereby does respectfully move the Court for an Order awarding attorneys' fees and providing for payment of litigation expenses.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Motion for Final Approval of Settlement and Approval of Plan of Allocation, and Memorandum of Points and Authorities in Support Thereof (the "Final Approval Memorandum"), the Declaration of Michael Albert Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Declaration" or "Robbins Geller Decl."), the Declaration of Eileen Ki Cheng ("Cheng Decl."), the Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion and Objections Received to Date ("Murray Decl."), the Stipulation of Settlement, dated February 5, 2024 (ECF 222-2) ("Stipulation"), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on September 6, 2024, after the August 23, 2024 deadline for Settlement Class Members to object to the motion for fees and expenses has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 19% of the Settlement Fund (the Settlement Amount, plus all interest accrued thereon).

2.    Whether the Court should approve Lead Counsel's request for payment of $1,540,059.57 in litigation costs and expenses incurred by Lead Counsel in the Action, plus all interest accrued thereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Four years to the day after Judge White had dismissed the entire Complaint in this matter, Robbins Geller's litigation team requested this Court to preliminarily approve the largest ever privacy or cybersecurity-related securities class action lawsuit settlement.[1]

According to Defendants, other plaintiff's firms, and all conventional methodologies, the estimated reasonably recoverable damages in this case were *zero*, making any recovery (much less a $350 million one) incalculably greater than the average recovery percentage in similar securities class action settlements.  But even in absolute terms, the $350,000,000 recovery is the fifth largest securities class action recovery in this District's history and is within the top 60 largest ever securities class action settlements.

Lead Counsel undertook substantial risk litigating against one of the world's richest companies and the combined efforts of three highly regarded law firms in this District.  The substantial risks that existed when the case was filed soon became manifest when Judge White granted Defendants' motion to dismiss and completely dismissed the Complaint.  Faced with the total loss of its case, yet faith in its counsel, State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island" or "Lead Plaintiff") opted to appeal the dismissal to the Ninth Circuit rather than amend a Complaint in which

---

[1]    All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement, dated February 5, 2024 (ECF 222-2).

1    it believed.  The Ninth Circuit not only reversed Judge White's dismissal, but its published opinion

2    greatly enhanced investors' ability to hold companies accountable for deceptive risk disclosures.

3         Lead Counsel expended substantial resources – approximately 23,000 hours in professional

4    time and over $1.5 million in expenses – all without any assurance of recovery.  As explained in

5    Rhode Island's accompanying motion for final approval, if we were to stretch conventional

6    methodologies to come up with a damages figure, the recovery here would be nearly 10 times the

7    median recovery for cases of this size.  It stands to reason, then, that the attorneys' fee award should

8    be proportionally greater than the median award – the Ninth Circuit benchmark of 25%.

9    Nevertheless, Robbins Geller requests that the Court grant final approval to the below-benchmark

10   fee agreement that Rhode Island negotiated with Lead Counsel – 19% of the Settlement Amount

11   (plus the interest earned thereon), consistent with the Court's "Use of Funds" chart, the Court's

12   Preliminary Approval Order and the Court-approved Notice Program.  ECF 229 at 4; ECF 232.

13        Lead Counsel's fee request is reasonable, particularly considering the extent of counsel's

14   efforts and the risks of this case.  This case has been pending for over five years, during which Lead

15   Counsel: (a) conducted an extensive investigation; (b) drafted the Complaint; (c) briefed multiple

16   motions to dismiss; (d) overcame a complete dismissal by Judge White after prosecuting in-house a

17   successful appeal resulting in a published opinion; (e) fought tooth and nail for discovery from

18   Defendants and 15 third-parties, notwithstanding a post-remand *sua sponte* discovery stay;

19   (f) litigated numerous discovery disputes; (g) prevailed against Defendants' attempt to narrow the

20   scope of the case, culminating in a supplement to the Complaint; and (h) briefed two rounds of class

21   certification motions involving four different experts.  Defendants exhausted every litigation strategy

22   to end the Action without any recovery for the Settlement Class.  But through all stages of the

23   Action, Lead Counsel kept fighting.

24        Lead Counsel's request for a fee award that is well below the Ninth Circuit's 25% fee

25   benchmark represents great value for the Settlement Class considering the excellent recovery and the

26   risks that Rhode Island and Lead Counsel overcame and continued to face in the Action.  Rhode

27   Island, a sophisticated state fund, negotiated and now supports this fee request, which deserves

28   significant weight in the analysis.  *See* §III.B.7, *infra*; Cheng Decl., ¶5.  To date, no objections to the

1  requested attorneys' fees and expenses have been received by Settlement Class Members, which also

2  supports approval.[2]

3      Lead Counsel respectfully requests that the requested fee be granted.

4  **II.     PROCEDURAL AND FACTUAL BACKGROUND**

5      Relevant history and facts are set out in Lead Plaintiff's Preliminary Approval and Final

6  Approval Memoranda, and are incorporated by this reference but not repeated here. *See* Procedural

7  Guidance for Class Action Settlements, Final Approval, §2 ("If the plaintiffs choose to file two

8  separate motions, they should not repeat the case history and background facts in both motions. The

9  motion for attorneys' fees should refer to the history and facts set out in the motion for final

10  approval.").

11  **III.    THE REQUESTED FEE IS FAIR AND REASONABLE**

12      **A.      A Reasonable Percentage of the Fund Is the Appropriate Method for
             Awarding Attorneys' Fees in Common Fund Cases**
13

14      The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common

15  fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

16  fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth

17  Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover,

18  increase or preserve a fund to which others also have a claim is entitled to recover from the fund the

19  costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769

20  (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768

21  F. App'x. 651, 653 (9th Cir. 2019).

22      In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine, a

23  reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900

24  n.16 (1984). Although courts have discretion to employ either the percentage of recovery or lodestar

25  method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)), "[t]he use

26  of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth

27  _____
   [2]    The deadline for submitting objections is August 23, 2024. Should any objections be received,

28  Lead Counsel will address them in its reply papers, due on September 6, 2024.

1    Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund

2    conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean*

3    *Air Lines Co.*, *Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also In re*

4    *Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) ("The

5    percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for

6    the benefit of the class."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal.

7    2008) ("use of the percentage method in common fund cases appears to be dominant").  Thus, the

8    Ninth Circuit has expressly and consistently approved the use of the percentage method in common

9    fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

10        The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing

11   attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of

12   any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6); *see also*

13   *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014)

14   ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of

15   attorneys' fees awards in federal securities class actions."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d

16   294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the

17   [PSLRA].").[3]

18        The percentage-of-recovery method is particularly appropriate in common fund cases like

19   this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see also Glass*

20   *v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on

21   use of percentage-of-the-fund approach); *Baird v. BlackRock Institutional Tr. Co.*, 2021 WL

22   5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar

23   crosscheck); *Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (same).  Among

24   other benefits, the percentage-of-recovery method decreases the burden imposed on courts by

25   eliminating a detailed and "more time-consuming" lodestar analysis.  *Bluetooth*, 654 F.3d at 942;

26   *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("[I]n practice, the

27

28   ───────────────
     [3]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

lodestar method is difficult to apply [and] time consuming to administer.") (quoting *Manual for Complex Litigation (Fourth)* §14.121 (2004)).

**B.    Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case**

Courts in this Circuit consider 25% of the common fund the benchmark or "starting point" for the award of fees in a common fund settlement and consider several factors to determine whether to adjust a fee award from the benchmark:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order") (citing *Vizcaino*, 290 F.3d at 1048-52).

Lead Counsel seeks a fee of 19% of Settlement Fund, which is nearly ***25% less*** than that 25% benchmark.  This request is well within the range of percentage fees that courts in this Circuit have awarded in other complex class actions.  *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo Co.*, No. 3:18-cv-03948, ECF 243 at 7 (N.D. Cal. Sept. 26, 2023) (approving fee of 25% of $300 million settlement); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar. 6, 2023) (approving cumulative 31.01% award of total $604,550,000 settlement); *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *16 (N.D. Cal. Feb. 17, 2023) (awarding 26% fee in $310 million settlement); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *2 (N.D. Cal. Nov. 21, 2022) (awarding 22.5% fee on $809,500,000 securities settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*3 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104,750,000 settlement); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576,750,000 settlement).  In fact, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047.  As discussed below, application of each of these factors here confirms that the requested 19% fee is fair and reasonable.

### 1.     Lead Counsel Achieved an Excellent Result for the Settlement Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar . . . .").

Here, against all odds and facing substantial risks, Lead Counsel obtained an excellent recovery for the Settlement Class, both in terms of overall amount ($350,000,000) and as a percentage of the estimated recoverable "damages" in this case. "A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019). On one hand, given the position of Defendants and other plaintiff's firms that there were no measurable damages in this case, it is actually impossible to calculate it as a percentage of estimated damages under conventional norms. *See, e.g.*, *Lee's Summit, MO v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000) ("'[Y]ou can't legitimately divide by 0.'"). But even if we disregard conventional norms and apply Lead Counsel's untested damages theory and case assumptions in an attempt to arrive at an estimate of reasonably recoverable damages – it would amount to $1.405 billion in total, and the $350 million recovery would amount to just under 25% of the stretch damages. To compare, all securities class actions settled from 2014 to 2022 where estimated damages exceeded $1 billion yielded a median recovery of only 2.6% of damages. *See, e.g.*, Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* at 6 (Cornerstone Research 2024).

The outsized recovery obtained in this case also compares favorably to another case involving the same underlying misconduct. Indeed, the Settlement is nearly ***50 times*** larger than the

$7.5 million consumer class action settlement arising out of the same two October 2018 and December 2018 data breaches that were at issue in this case. *In re Google Plus Profile Litig.*, Case No. 5:18-cv-06164-EJD (N.D. Cal.). One legal commentator, speaking to trade publication *Business Insurance*, recognized the implications of such a favorable recovery on the insurance industry as a whole, stating that the "[S]ettlement highlights the importance of having sufficient coverage for D&O exposures related to disclosing and reporting data privacy breaches and cyberattacks."[4] Another observed that the Settlement "is a clear wakeup call that it is really important to analyze D&O exposures, including privacy and cyber-related D&O exposures, and to work with brokers and insurers to ensure robust coverage, because the financial implications of these kinds of suits are very significant." *Id.* Proxy advisory firm Institutional Shareholder Services ("ISS") likewise observed the momentous nature of the Settlement when compared to similar types of securities cases related to cyber security and privacy:

> If approved, the $350 million payout will become the largest privacy and cybersecurity-related securities class action lawsuit settlement, surpassing Equifax ($149 million) and Yahoo! ($80 million). Cyber-related securities class actions have received mixed success in courts, with a number of high-profile actions, such as Capital One, Marriott, Alphabet, and Facebook initially dismissed. However, the Ninth Circuit's revival of both the Alphabet Google+, as well as the Facebook Cambridge Analytica-related securities lawsuit, could bode well for future investor recoveries related to cyber or data privacy allegations.[5]

The outstanding result obtained for the Settlement Class here supports Lead Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

## 2.    The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13.

---

[4]    https://www.businessinsurance.com/article/20240301/NEWS06/912362852/Google-class-action-settlement-shines-light-on-D&O-exposures,-cyber-liability-co.

[5]    https://insights.issgovernance.com/posts/google-parent-alphabet-agrees-to-pay-shareholders-350-million-over-data-leak/.

1    Despite their ultimate success, Lead Counsel assumed significant risk at every procedural

2    step of the litigation.  *See generally* Preliminary Approval Memorandum (ECF 222).  At every stage,

3    Defendants sought outright dismissal or to limit the scope of the case, even ***after*** the Ninth Circuit

4    upheld the Complaint.  When the case entered discovery, Alphabet's lawyers relentlessly opposed

5    Lead Plaintiff's efforts to obtain relevant documents and depose witnesses, and Lead Plaintiff had to

6    endure ***another*** discovery stay – a six-month stay Judge White imposed *sua sponte*.  Then,

7    immediately after overruling Lead Plaintiff's objections to an unprecedented discovery order that

8    imposed a case system for deposition in this matter, Judge White, having presided over this case for

9    nearly five years, entered an order of recusal order with no explanation other than "finding myself

10   disqualified."  ECF 188.  When the parties reached an agreement to settle the case, Rhode Island's

11   renewed motion for class certification was fully briefed.  Had the Court granted Rhode Island's

12   motion, Defendants surely would have sought an appeal under Rule 23(f) and if that had not worked,

13   they would have pursued summary judgment following completion of discovery.  *See, e.g.*, *In re*

14   *Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at *27-*34 (S.D.N.Y. Mar. 30, 2023) (granting summary

15   judgment and dismissing securities fraud claims), *aff'd sub nom.*, *Menorah Mivtachim Ins. Ltd. v.*

16   *Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

17   At trial, the case would have turned largely on expert testimony concerning highly technical

18   loss causation and damages matters, as well as the credibility of fact witnesses – many of whom

19   would likely be represented by defense counsel and/or were still employed at Alphabet.  Defendants

20   needed only to defeat one element of Lead Plaintiff's claims to prevail, and there was a significant

21   risk the jury would agree with Defendants' experts and find no liability, no damages, or award far

22   less than Lead Plaintiff sought to recover.  *See, e.g.*, *Vinh Nguyen v. Radient Pharms. Corp.*, 2014

23   WL 1802293, at *2 (C.D. Cal. May 6, 2014) (noting, in securities class action, that "[p]roving and

24   calculating damages required a complex analysis, requiring the jury to parse divergent positions of

25   expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to

26   predict and risky."); *see also, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1,

27   2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023)

28   (jury verdict in favor of securities fraud defendants even after court had granted summary judgment

1   in favor of plaintiffs on certain critical elements).  And even if Lead Plaintiff survived summary

2   judgment and obtained a favorable verdict at the liability phase of trial, it would **still** have faced the

3   risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re Apollo Grp., Inc. Sec.*

4   *Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (granting motion for a judgment as a matter of

5   law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss

6   causation), *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010).

7        Thus, there existed a significant risk that class-wide recoverable damages would have been

8   far less than $350,000,000, including the risk of no recovery at all.  *Volkswagen* Fee Order, 2017

9   WL 1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]'  It is

10  possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of

11  its claims . . . .'") (alteration in original).  And any recovery absent the Settlement "'would come

12  years in the future and at far greater expense to the . . . Class.'"  *Id.*  The $350,000,000 Settlement,

13  achieved in the face of these significant risks, amply supports the requested 19% fee award.

14              **3.    The Skill Required and Quality of Work**

15        The quality of Lead Counsel's representation, epitomized by winning a unanimous reversal

16  to reinstate the case from the Ninth Circuit, further supports the reasonableness of the requested fee.

17  Lead Counsel successfully litigated the case through several potentially dispositive motions.

18  Robbins Geller is a nationally recognized leader in securities class actions and complex litigation.

19  Robbins Geller Decl., Ex. G.  The firm has a track record of trying cases, or settling cases at a

20  premium.  Clients retain Lead Counsel to benefit from its experience and resources in order to obtain

21  the largest possible recovery for the class in question.  Here, Lead Counsel's skill and experience

22  brought about an exceptional result, further supporting the requested fee award.

23        The standing of opposing counsel should also be weighed because such standing reflects the

24  challenge faced by Lead Counsel.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997).

25  It would be an understatement to say that Defendants had good lawyers.  Indeed, Alphabet put its

26  enormous resources to work by employing three of the most well-regarded defense firms in the

27  country – (1) Wilson Sonsini Goodrich & Rosati, P.C.; (2) Freshfields Bruckhaus Deringer US LLP;

28  and (3) Swanson & McNamara LLP – to work **together** to litigate the case day-to-day against

Robbins Geller's litigation team.  Alphabet brought in a ***fourth*** law firm for briefing before the Supreme Court, Hogan Lovells, led by Supreme Court specialist Neal Katyal.  Alphabet received the backing of the Chamber of Commerce of the United States of America, the Securities Industry and Financial Markets Association, Business Roundtable, and Washington Legal Foundation, all of whom submitted amicus briefs at the Supreme Court supporting Alphabet's position.  So too with Professor Joseph A. Grundfest, who attempted to file an amicus brief in support of Alphabet's bid to defeat class certification.  Lead Plaintiff's ability to obtain a favorable result for the Settlement Class while litigating against these formidable defense firms and their well-heeled clients further evidences the quality of Lead Counsel's work and weighs in favor of awarding the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen* Fee Order, 2017 WL 1047834, at *3.  This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*  "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014).  There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. *Supra*, §III.B.2.  For example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million (in 2010 dollars). In the most recent PSLRA case to go to trial in this District, the jury reached a verdict in Elon Musk's favor – despite the Court granting ***plaintiff's*** summary judgment on the issue of whether

1   Musk knowingly made false statements, evincing the strength of the claims.  *See Tesla*, 2022 WL

2   1497559 & *Tesla*, ECF 671; *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D.

3   Cal. Nov. 27, 2007) (holding similarly).

4         Here, Lead Counsel has received no compensation throughout the course of the Action,

5   despite investing over 23,000 hours and incurring substantial expenses in prosecuting this case.

6   Additional (uncompensated) work in connection with the Settlement and claims administration

7   already has been undertaken and will be required going forward.  Any fee award has always been

8   contingent on the result achieved and on this Court's discretion.  Indeed, the only certainty was that

9   there would be no fee without a successful result.  Nevertheless, Lead Counsel committed significant

10  resources of both time and money to vigorously prosecute this Action, and successfully brought it to

11  a highly favorable conclusion for the Settlement Class's benefit.  Meanwhile, "Class Counsel had to

12  turn down opportunities to work on other cases to devote the appropriate amount of time, resources,

13  and energy necessary to handle this complex case." *Volkswagen* Fee Order, 2017 WL 1047834, at

14  *3.  The contingent nature of counsel's representation thus supports approval of the requested fee.

15        **5.**      **Awards Made in Similar Cases Support the Fee Request**

16        Lead Counsel's fee request is also supported by awards made in similar cases.  As discussed

17  in §III.B, the 19% fee request is below the range of fee percentages awarded in comparable

18  settlements.

19        As further addressed in §III.B.7, the resulting multiplier of approximately 4.58 on Lead

20  Counsel's lodestar is also within the range of lodestar multipliers applied in cases of this nature with

21  substantial contingency fee risks.  *See Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *1

22  (S.D.N.Y. Sept. 9, 2015) (awarding fee resulting in a 4.87 multiplier where class would "receive

23  over $130 million in total value"); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7

24  (N.D. Cal. May 21, 2015) (approving a 5.5 multiplier in a $203 million settlement); *In re Rite Aid*

25  *Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving a 6.96 multiplier in a $126.6

26  million settlement); *In re DaimlerChrysler Sec. Litig.*, 2004 U.S. Dist. LEXIS 31757, at *5 (D. Del.

27  Feb. 5, 2004) (approving multiplier of 4.2 in a $300 million settlement); *In re Charter Commc'ns,*

28  *Inc. Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving 5.61 multiplier in

$146,250,000 settlement); *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC, ECF 338 at 2-3 (S.D.N.Y. July 22, 2022) (approving a multiplier of 4.64 in a $175 million settlement); *Nieman v. Duke Energy Corp.*, 2015 WL 13609363 (W.D.N.C. Nov. 2, 2015) (approving multiplier of 6.43 in $146,250,000 settlement); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approving a multiplier of 5.9 in a $600 million settlement); *In re 3Com Sec. Litig.*, No. 5:97-21083-EAI, ECF 180 at 10 (N.D. Cal. Mar. 9, 2001) (awarding fee representing a 6.67 multiplier in a $259 million settlement).  More importantly, while a percentage award naturally increases the fees for a disproportionately high recovery such as the one here, a lodestar cross-check does not.  In other words, a lodestar cross-check suffers from two significant shortcomings.  First, it is indifferent to the results achieved.  Here, where the recovery is 10 times the applicable median recovery percentage (even using stretch damages), it would be logical to use a lodestar multiplier that is 10 times the median multiplier.  Yet, the fee percentage that Rhode Island negotiated yields a multiplier that is squarely within the range of the foregoing cases.  And second, it punishes efficiency and rewards inefficiency, such that a law firm that expends 50,000 hours accomplishing less than a law firm that expends 20,000 hours would enjoy a much higher lodestar cross-check.

### 6.      A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable

Despite these significant shortcomings, courts may (but are not required to) cross check the proposed award against counsel's lodestar.  *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Plains All Am.*, 2022 WL 4453864, at *2 (finding cross check unnecessary, given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because

1    "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical

2    precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need

3    not review actual billing records'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983,

4    at \*14 (confirming that "trial courts need not, and indeed should not, become green-eyeshade

5    accountants" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice,

6    not to achieve auditing perfection'").

7           "[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by

8    a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks

9    associated with the representation.'" *Rentech, Inc.*, 2019 WL 5173771, at \*10 (second alteration in

10   original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  In

11   this case, the lodestar method demonstrates the reasonableness of the requested fee.  As detailed here

12   and in the Robbins Geller Declaration, over 23,000 hours of attorney and para-professional time

13   were expended prosecuting the Action for the benefit of the Settlement Class.  The hours spent to

14   obtain the results are more than reasonable, and there is no question that the hours expended were

15   necessary.

16          Lead Counsel's hourly rates, too, are reasonable.  In fact, Lead Counsel's rates have recent

17   judicial approval in this District.  *See Purple Mountain Tr.*, ECF 243 (approving attorneys' fee with

18   Robbins Geller's prevailing hourly rates); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at \*9

19   (N.D. Cal. July 15, 2022) (Judge Gilliam approving hourly rates of $760 to $1,325 for partners, $895

20   to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins Geller's "billing rates in

21   line with prevailing rates in this district for personnel of comparable experience, skill, and

22   reputation").

23          The last piece of the cross-check analysis is the risk multiplier.  Lead Counsel's lodestar,

24   derived by multiplying the hours spent on the Action by each attorney and litigation professional by

25   their current hourly rates, is $14,514,240.00.  Accordingly, the requested fee of 19% represents a

26   multiplier of approximately 4.58 on Lead Counsel's lodestar.[6]  "[C]ourts regularly award lodestar

27

28   _____

[6]   The actual realized multiplier has already, and will continue to, decline over time as Lead Counsel devotes additional attorney time to preparing final approval materials and overseeing

1    multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v.*

2    *KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Vizcaino*, 290 F.3d at 1052-54); *see,*

3    *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021)

4    (awarding fee in $650 million common fund settlement representing 4.71 multiplier), *aff'd*, 2022

5    WL 822923 (9th Cir. Mar. 17, 2022).  Moreover, the Ninth Circuit has determined in the context of a

6    cross-check that a multiplier of 6.85 was "well within the range of multipliers that courts have

7    allowed."  *Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007).  Given the risk

8    undertaken by Lead Counsel and the extraordinary results achieved for the Settlement Class, a risk

9    multiplier of approximately 4.58 is reasonable here.

10              **7.      The Settlement Class's Reaction to Date Supports the Fee**
                          **Request**

11

12              Courts within the Ninth Circuit also consider the reaction of the class when deciding whether

13    to award the requested fee.  *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4 (considering

14    that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed

15    fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested

16    fees"); *In re Wash. Mut., Inc. Sec. Litig*, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011)

17    (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses

18    requested were filed").  While a certain number of objections are to be expected in a large class

19    action such as this, "the absence of a large number of objections to a proposed class action

20    settlement raises a strong presumption that the terms of a proposed class settlement action are

21    favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

22    529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of

23    objections from institutional investors 'who presumably had the means, the motive, and the

24    sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

25              Settlement Class Members were informed in the Notice that Lead Counsel would move the

26    Court for an award of attorneys' fees in an amount not to exceed 19% of the Settlement Amount and

27    processing of claims by the Claims Administrator and the distribution of the Settlement funds to
      Settlement Class Members with valid claims.  No additional counsel fees will be sought for such
28    work.

1    for payment of litigation expenses not to exceed $1,750,000, plus interest earned thereon.

2    Settlement Class Members were also advised of their right to object to the fee and expense request,

3    and that such objections are to be submitted to the Claims Administrator no later than August 23,

4    2024. While this deadline has not yet passed, to date, not a ***single*** objection has been received. *See*

5    Murray Decl., ¶18.

6         Finally, Lead Plaintiff negotiated and approved the percentage sought here. Cheng Decl., ¶5.

7    Lead Plaintiff's approval supports granting the requested fee. *See Hatamian v. Advanced Micro*

8    *Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request

9    "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional

10   investors").

11        In sum, each of the relevant factors supports the award of attorneys' fees of 19% of the

12   Settlement Fund. Accordingly, this fee request is reasonable and should be approved.

13   **IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE**
**APPROVED**
14

15        Lead Counsel further requests an award of its litigation expenses in the amount of

16   $1,540,059.57 (less than the $1,750,000 contained in the Notice). These expenses were incurred in

17   prosecuting and resolving the Action on behalf of the Settlement Class. Robbins Geller Decl., Ex. C.

18        "Attorneys who create a common fund are entitled to the reimbursement of expenses they

19   advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 ( N.D. Cal. Feb. 19,

20   2013). In assessing whether counsel's expenses are compensable in a common fund case, courts

21   look to whether the particular costs are the type of "out-of-pocket expenses that 'would normally be

22   charged to a fee paying client.'" *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Hefler*,

23   2018 WL 6619983, at *44. The largest component of Lead Counsel's expenses was the cost of the

24   loss causation and damages experts (primarily Professor Gelbach, Professor Partnoy and Professor

25   Mason) with whom Lead Counsel developed a novel approach to proving measurable damages and

26   price impact in connection with the October 2018 and April 2019 declines. Professor Gelbach,

27   Professor Partnoy, Professor Mason, and other experts worked tirelessly, provided valuable

28   assistance, expert reports, and economic analyses. *See* Robbins Geller Decl., ¶7(d). As discussed in

1    the Robbins Geller Declaration, these experts expended significant time on the case analyzing the

2    facts, drafting detailed reports, performing a multitude of economic analyses, preparing for

3    depositions, drafting appropriate discovery requests, preparing for settlement discussions, and

4    developing the Plan of Allocation.  *Id.*  Aside from experts and consultants, the other expenses

5    sought by Lead Counsel, *i.e.*, those associated with, among other things, document management,

6    travel, mediation, service of process, and online legal and factual research (including transcripts) –

7    are of the type that are routinely charged to hourly paying clients and, therefore, should be

8    reimbursed out of the common fund.  *See, e.g.*, *Vincent*, 2013 WL 621865, at *5 (granting award of

9    costs and expenses for "three experts and the mediator, photocopying and mailing expenses, travel

10   expenses, and other reasonable litigation related expenses"); *Ontiveros v. Zamora*, 303 F.R.D. 356,

11   375 (E.D. Cal. 2014) (granting expense reimbursement to class counsel and noting "itemized costs

12   relating to . . . expert fees" were "reasonable litigation expenses"); *Redwen v. Sino Clean Energy,*

13   *Inc.*, 2013 WL 12303367, at *9 (C.D. Cal. July 9, 2013) (reimbursing "expenses for mediation fees,

14   copying, telephone calls, expert expenses, research costs, travel, postage, messengers, and filing

15   fees").

16   **V.    CONCLUSION**

17       Lead Counsel's efforts on behalf of the Settlement Class resulted in an outstanding result

18   under any measure.  Based on the foregoing and upon the entire record herein, Lead Plaintiff and

19   Lead Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 19% of

20

21

22

23

24

25

26

27

28

1    the Settlement Amount; and (ii) award $1,540,059.57 in litigation expenses, plus interest on both

2    amounts at the same rate as earned by the Settlement Fund.

3    DATED:  July 19, 2024                    Respectfully submitted,

4                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
5                                            JASON A. FORGE
                                            ELLEN GUSIKOFF STEWART
6                                            LAURA ANDRACCHIO
                                            MICHAEL ALBERT
7                                            J. MARCO JANOSKI GRAY
                                            TING H. LIU
8                                            KENNETH P. DOLITSKY
                                            SARAH A. FALLON

9

10                                                   s/ Jason A. Forge

11                                            JASON A. FORGE

12                                           655 West Broadway, Suite 1900
                                            San Diego, CA  92101
13                                           Telephone:  619/231-1058
                                            619/231-7423 (fax)
14                                           jforge@rgrdlaw.com
                                            elleng@rgrdlaw.com
15                                           landracchio@rgrdlaw.comx
                                            malbert@rgrdlaw.com
16                                           mjanoski@rgrdlaw.com
                                            tliu@rgrdlaw.com
17                                           kdolitsky@rgrdlaw.com
                                            sfallon@rgrdlaw.com
18
                                            Lead Counsel for Plaintiff
19

20

21

22

23

24

25

26

27

28